No. 21806.

GENERAL ELECTRIC COMPANY *v.* WEBCO CONSTRUCTION CO., AND NATIONAL UNION FIRE INSURANCE COMPANY.
(433 P.2d 760)

Decided November 20, 1967.

Martin I. Steinberg, for plaintiff in error.

Thomas E. McCarthy, for defendants in error.

*In Department.*

Opinion by Mr. Justice Day.

The parties are here in the same order that they appeared in the trial court and will be referred to as

follows: Plaintiff in error as plaintiff or as G.E.; the defendants in error as defendants or Webco and National Union, respectively.

In November, 1962, Webco, as general contractor, was awarded a contract by School District No. 1 in Arapahoe County, Colorado, for the construction of some new classrooms and to make other alterations to the Flood Junior High School building in Englewood, Colorado. Pursuant to C.R.S. 1963, 86-7-6, Webco, through National Union as surety, delivered to the school district a *performance* bond and *labor and material payment* bond. One undertaking was for the faithful performance of the contract and the other bound the principal and surety to make prompt payment to suppliers for all ιabor and material used or required to be used in the performance of the general contract. The latter bond protection extended to suppliers of either the principal contractor or the subcontractors.

The bond provided that no action by a claimant thereunder could be instituted after the expiration of one year following the date on which the work called for in the contract was completed, but it had another provision that "any law controlling" should be deemed to amend the one year provision if such law required a shorter period of time within which the action must be brought.

Currier Electric Co., Inc. was engaged by Webco to perform the electrical work required by the principal contract. In the performance of its subcontract, the Currier company purchased material and electrical equipment from G.E.

Plaintiff instituted suit against Currier as the primary debtor and joined Webco and National Union under the provisions of the labor and material payment bond. The action was commenced on June 18, 1964 after there had been negotiations between the attorneys of the respective parties for many months. Because the Currier firm was involved in bankruptcy proceedings in the

federal district court, all proceedings in the action with respect to that defendant were stayed by the bankruptcy court. In both the trial court and here the action has continued only against Webco and National Union under the bond.

The trial court entered judgment for the defendants. Although finding that a balance of $14,110.10 was owing the plaintiff for materials sold and delivered to Currier, the trial court nevertheless ruled that there could be no judgment against Webco and National Union because under the provisions of C.R.S. 1963, 86-7-4, plaintiff was required to commence its action on the material and labor bond within six months after the completion of the work under the principal contract; that more than six months had elapsed between the time the principal contract work was completed and the date of the commencement of the action; and that therefore the action against the principal and surety was barred.

As grounds for reversal of the judgment, plaintiff advances three arguments:

I. An action on a public works contractor's bond for more than $1000 is not subject to a six months statute of limitations;

II. The actual completion of the work was less than six months prior to the bringing of the suit; and

III. Defendants, by the conduct of their attorneys, were estopped to raise the defense of the six months statute of limitations.

We will discuss plaintiff's contentions in that order.

I.

For a resolution of the problem as to whether there is a six months statute of limitations which barred this action, an analysis of several sections of the statutes involving public construction is called for. One is C.R.S. 1963, 86-7-4. It was originally enacted as chapter 135 of the Session Laws of 1915 and provides that before commencing any work the "person" to whom a public

works·contract is awarded is required to furnish a bond conditioned that there shall be *prompt payment* to all persons · furnishing labor or materials, whether to the principal contractor or subcontractors. The .section is concluded with the following language:

"* * . * Subcontractors,, materialmen, mechanics and others, may have a right of action for amounts lawfully due them from the contractor or subcontractor, directly against the principal and surety of such bond. Such action for material furnished or labor rendered *shall be brought within six months* after the completion of the work and not afterwards." (Emphasis added.)

Subsequent sections of C.R.S. 1963, 86-7-5 through 7, retained by the Revisor of Statutes and reenacted in the 1953 and 1963 Colorado Revised Statutes were originally enacted as Chapter 155 of the Session Laws of 1923. Section 86-7-5 defines what is meant by a "contractor" of public works contract. Section 86-7-6 provides that on all contracts of more than $1000 the principal contractor shall deliver a *performance* bond, *i.e.,* binding the principal and surety to the public agency for the faithful performance of the public works project. There is an additional provision to protect laborers and materialmen, not only against the bond but when read with 86-7-7 provides for them another remedy whereby their unpaid claims may be filed for payment with the public agency. The latter is thereafter required for a period of *no longer than ninety days* following a date fixed and published for final settlement with the principal contractor to withhold payment on the contract in an amount sufficient to cover any such claims. There is no repetition of the requirement to commence action within six months.

■ Therefore, the question presented is: Did the legislature by its 1923 enactment repeal by implication 86-7-4 as to all contracts over $1000; and does there remain only the bond required by 86-7-6 on all contracts over $1000? We answer this question in the

negative because of the following legislative history:

The 1923 act dealing with public contracts contained four sections which were not republished by the Statutory Revisor in presenting the Revised Statutes for reenactment. One of the original sections in the 1923 enactment provided:

"Nothing in this Act shall be held to repeal Chapter 135 of the Session Laws of 1915, approved April 12, 1915, but the requirement of said Chapter 135 shall be *construed with the requirements* of the within Act to the end that the privileges, *requirements* and remedies *of both* shall be available to all concerned." (Emphasis added.)

 From this language it is plain that 86-7-4 applied to all contracts regardless of amount and still does. It was not repealed by implication. In fact, the contrary is expressly stated. With the intention of the legislature so clearly spelled out at the time of the additional provisions in the Act of 1923, it is axiomatic that this court must give full force and effect to the legislative mandate. The legislative intent in passing 86-7-5 through 7 intended to and did *add* to the then existing law for public works contracts involving more than $1000. First of all, they clarified what would be considered public works contracts. They added the provision requiring the principal contractor to furnish a *performance bond* where previously a bond for the *prompt payment* of suppliers and materialmen was deemed sufficient. By providing in this section that faithful performance would include the payment of claims for labor and materials, it was not necessary to repeat the six months statute of limitations found in 86-7-4 because that section states clearly that the payment bond required therein shall be *"in addition to all bonds that may now or may hereafter be required of them [the contractors]."* (Emphasis added.)

We do not find any portions of the sections here under consideration contrary to or in conflict with the six

238

months limitations in 86-7-4. If we were to accept plaintiffs' argument that the six months limitation isn't applicable to public works contracts of over $1000 by reason of the failure of 86-7-6 to also state therein additionally a six months statute of limitation, then it would be necessary to look to the general six year statute of limitations (C.R.S. 1963, 87-1-11) as the *only* limitation of actions on public contracts. Such an interpretation would be unreasonable and would thwart what we believe was the legislative intent to provide for prompt and speedy settlement of disputes involving laborers and materialmen on public buildings, just as there is a similar limitation of actions under the general mechanics' lien statute.

A right of action afforded the supplier against a general contractor and its surety with whom there is no contractural privity is purely statutory. *Flaugh v. Empire Clay Products, Inc.*, 157 Colo. 409, 402 P.2d 932. It is within the power of the legislature also to limit the right of action by specific provisions. When it does so, as in these enactments, the specific limitation of right takes precedence over the general law. This is a common rule of statutory interpretation. But also, any other ruling would fly in the teeth of the legislative declaration that the "privileges, *requirements* and remedies" of both the *1915* and *1923* laws shall be available to all concerned.

II.

Having determined that the six months limitation applies, we next examine whether the court committed error in holding that the commencement of the action on June 18, 1964, was too late. For the suit to be timely instituted the work on the principal contract would have had to be completed some time after December 18, 1963. The trial court found that the work was completed in "mid-October," whereas the evidence in the record relates to completion in November. The building inspector for the city of Englewood testified

(although on cross examination there was an attempt to impeach him) that on his final inspection on November 7, 1963, Webco had substantially completed its contract according to the plans and specifications. The architect, who was a witness for the plaintiff, testified on direct examination that by the end of November no major *items* were to be completed on the project and only minor deviations remained. These items he characterized as "miscellaneous items of patches of plaster, of painting and minor touch-up work * * * they were of minor consequences." There was further evidence that children were in the school and using the new and remodeled facilities even from the beginning of the term in September, 1963. Although the evidence may not support the "mid-October" findings by the court, it does support the court's determination of the completion more than six months prior to the commencement of the action.

### III.

Under this assignment of error plaintiff contends that by reason of the negotiations which were prolonged by the attorneys for Webco and National Union the statutory time elapsed and the defendants are estopped to plead the statute of limitations. This argument appears to be predicated on a theory that Webco and National Union, through counsel, had admitted liability and that only the amount was in dispute. The record does not support such argument. The only witness testifying on the issue of estoppel was one of the attorneys for the plaintiff. His testimony shows that he thought all along that he had a period of one year within which to commence the action. His testimony was that he didn't file the suit sooner because he didn't want to "forestall any possibility of settling the thing amicably and wasting two or three days in court." We hold that the trial court ruling was correct and that the evidence does not support the plea of estoppel.

The judgment is affirmed.

Mr. Chief Justice Moore; Mr. Justice Sutton and Mr. Justice Kelley concur.