460 F.2d 109
 HENSEL PHELPS CONSTRUCTION CO., a Colorado corporation,
Aetna Casualty and Surety Company, a Connecticut
corporation, Defendants-Appellants,
v.
GENERAL SIGNAL CORPORATION, a New York corporation, doing
business as BIF, Plaintiff-Appellee.
 No. 71-1254.
 United States Court of Appeals,
Tenth Circuit.
 May 30, 1972.
 
 Walker D. Miller, of Miller, Ruyle, Steinmark & Shade, Greeley, Colo. (David J. Miller, Greeley, Colo., with him on the brief), for defendants-appellants.
 Robert E. Benson, Denver, Colo. (Holland & Hart, Denver, Colo., of counsel, with him on the brief), for plaintiff-appellee.
 Before MURRAH, SETH and BARRETT, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 This diversity suit arises out of the construction of a sewage treatment plant in Boulder, Colorado, for which Hensel Phelps Construction Company (a Colorado corporation) was the general contractor. Appellee, General Signal Corporation (a New York corporation doing business as BIF), furnished materials to E. K. Jenkins, Inc., a now bankrupt subcontractor. BIF never received payment for these materials which were incorporated into the finished plant. After Hensel Phelps and its statutory surety, Aetna Casualty and Surety Company (a Connecticut corporation), finally denied liability for the amount owing for the materials furnished, BIF brought this suit against them pursuant to Colorado's public works mechanic's lien law.[1] See 1963 C.R.S. Secs. 86-7-4 and 86-7-6.
 
 
 2
 Section 86-7-4 provides that an action asserting liability on a statutory payment bond "shall be brought within six months after the completion of the work and not afterwards."[2] The defense was, and is, that "completion," as used in the statute, means "substantial completion;" that the work in this case was substantially completed more than six months prior to commencement of this suit on January 17, 1969; and, that the suit is, thus, barred by the statute of limitation.
 
 
 3
 After exhaustion of discovery proceedings and a full hearing on BIF's motion for summary judgment, the trial court concluded that there was no genuine issue as to any material fact; that substantial items of work called for in the contract between Hensel Phelps and the City were performed within six months of the commencement of the suit; and that the suit was, therefore, timely filed. This appeal is from the trial court's summary judgment in favor of BIF for the uncontested amount claimed ($18,702) plus interest.
 
 
 4
 The latest Colorado case seems to construe the statute as requiring only substantial completion to commence the running of the limitation period. See General Electric Co. v. Webco Construction Co., 164 Colo. 232, 433 P.2d 760, 763 (1967). The trial court apparently so interpreted Colorado's construction of its statute and we accept this construction as the law of this case. Hensel Phelps and its surety admit, as they must, that some work on the construction project was done within the six-month period, but contend that it was merely corrective work required under the contract's warranty provisions and not so substantial as to toll the statute of limitations. The issue is thus narrowed to a determination whether what was admittedly done within the six-month period prior to commencement of this suit was, as a matter of law, necessary to the substantial completion of work on the contract.
 
 
 5
 What constitutes substantial completion must, of course, ultimately rest on the facts of each case. As a general proposition, however, it may be said that work which is an integral part of a continuing effort to finish a project in conformance with contract specifications, especially when performed reasonably soon after actual construction ceases, is not insubstantial.[3]
 
 
 6
 The established facts of this case are these. The general contract price for the construction project was in excess of $1.8 million. A "semi-final inspection" tour of the plant was conducted by officials of Hensel Phelps and the City's engineering consultants in March of 1968-ten months before commencement of this suit. A "punch list" of several items that either needed correction or were unfinished according to contract specifications resulted from this inspection. It was understood that the items on the punch list were to be completed or corrected before Hensel Phelps would receive full payment for satisfactory performance of its obligations under the contract. After the inspection tour a payment of $36,453 was made, leaving approximately $250,000 of the full contract price unpaid. Three days after the inspection tour the City started channelling effluent from the existing sewage treatment plant through the new plant, and employees of the City began operation of the new plant on April 15, 1968. The parties also agreed to have the contract's one year warranty provisions run from April, 1968.
 
 
 7
 Work on the punch list items continued during the months following the March inspection, and progress payments were periodically made to Hensel Phelps. On July 19, 1968, Hensel Phelps received a letter from a city official stating that while further payment was forthcoming, the City would continue to retain $87,446.86 of the total contract price. Of this amount $36,115 was retained for items which remained unfinished or uncorrected according to contract specifications. These items of work, all of which were performed within six months of the commencement of this suit, included: work on a vertical pump, valued at $14,830; work on the comminutor, $14,475; reseeding of the plant lawn, $5,000; and several miscellaneous items valued at $1,810.
 
 
 8
 Given these facts we cannot say that the items of work done within the six-month period were in the nature of trivial adjustments or corrections of minor deviations performed after substantial completion of work on the contract. Certainly they were not in the same category as the "miscellaneous items of patches of plaster, of painting and minor touch-up work" found to be insignificant and of minor consequence in the Webco case. See 433 P.2d at 763. Rather, these items of work represent the final links in a chain of similar tasks which had to be completed if Hensel Phelps was to recover the full contract price. While of small value in comparison with the total contract, it cannot be said that they were insubstantial.
 
 
 9
 The District Court correctly concluded that "completion of the work" occurred within the six-month limitation period and that this action was timely filed. The summary judgment is affirmed.
 
 
 
 [1]
 BIF's alternative claim, seeking payment on the basis of an equitable lien, was dismissed by the trial court
 
 
 [2]
 The Colorado Supreme Court has interpreted the six-month limitation period of Sec. 86-7-4 as also being applicable to actions asserting liability on a statutory performance bond pursuant to Sec. 86-7-6. General Electric Co. v. Webco Construction Co., 164 Colo. 232, 433 P.2d 760 (1967)
 
 
 [3]
 See generally Allen v. Wells, 75 Colo. 608, 227 P. 833 (1924); Western Elaterite Roofing Co. v. Fisher, 85 Colo. 5, 273 P. 19 (1928); Curtis v. Nunns, 54 Colo. 554, 131 P. 403 (1913); Lichty v. Houston Lumber Co., 39 Colo. 53, 88 P. 846 (1907); State of Kansas ex rel. Winkle Terra Cotta Co. v. United States Fidelity & Guaranty Co., 322 Mo. 121, 14 S.W. 2d 576 (1928); Milliken Bros., Inc. v. City of New York, 201 N.Y. 65, 94 N.E. 196 (1911); Totorica v. Thomas, 16 Utah 2d 175, 397 P.2d 984 (1965); Wilcox v. Cloward, 88 Utah 503, 56 P.2d 1 (1936); Arch Sellery, Inc. v. Simpson, 360 P.2d 911 (Wyo.1961)