## No. 25430

**City and County of Denver, a municipal corporation, and W. H. McNichols, Jr., Mayor of the City and County of Denver v. Linden Blue, Edward R. Burke, Jr., Elvin R. Caldwell, Eugene DiManna, Paul Hentzell, Irving S. Hook, Robert Koch, Kenneth MacIntosh, James J. Nolan, Larry J. Perry, William R. Roberts, J. Ivanhoe Rosenberg and Don Wyman, individually and in their official capacity as members of the Board of Councilmen of the City and County of Denver**
(500 P.2d 970)

Decided September 5, 1972.     Rehearing denied September 25, 1972.

352

Max P. Zall, City Attorney, Gerald Himelgrin, Assistant, Brian H. Goral, Assistant, for plaintiffs-appellees.

Creamer and Creamer, George Louis Creamer, Nathan H. Creamer, Quiat and Quiat, James C. Bull, for defendants-appellants.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an appeal by the defendants from an adverse ruling in an action for declaratory judgment instituted in the name of the City and County of Denver and W. H. McNichols, Jr., the Mayor, as plaintiffs (Mayor), against the thirteen members of the City Council, individually and in their official capacity, as defendants (Council).

■ The Charter of the City and County of Denver requires that the Mayor prepare the budget and submit it to the City Council, which he did. The Council substituted a budget of its own. The trial court declared that the Mayor's budget was the only lawful budget, inasmuch as the Council had not revised or altered it pursuant to the authority granted it by Section A6.9-1 of the charter. We affirm the basic declaration of the trial court.

Section A6.9-1 reads:

"A6.9-1 On the day set for consideration of the proposed budget the Council shall review the proposed budget and may revise, alter, increase or decrease the items as it shall deem necessary, but the Council shall not change any item or amount in, nor the total of, the proposed budget, except upon a vote of two-thirds (2/3) of the members thereof.[1] Not later than the second Monday in November the Council shall adopt by motion a budget setting forth the expenditures to be made in the ensuing fiscal year and the means of financing such expenditures. The Council shall provide that the amount of the aggregate proposed expenditures shall not be in excess of the estimated opening balances and anticipated incomes."

Other issues were raised in the trial court, but at the oral argument before this court it was agreed by counsel for the parties that only the correctness of the declaratory judgment portion of the judgment be considered on review. We proceed, therefore, to the merits of the controversy.

The basic issue for resolution is whether the annual city budget prepared by the Mayor and submitted to the Council, in the absence of any revision, alteration, increase or decrease in the items of said budget by a two-thirds vote of the Council, becomes the operating budget of the City and County of Denver by operation of law. The trial court stated it in this manner:

"The gist of this controversy is the interpretation of the language, meaning, import and effect of Section A6.9-1, and included in the overall adversary positions of the parties is the determination of whether under the Charter the Mayor has the sole prerogative of the submission of a budget to Council for revision, amendment and subsequent adoption, or whether the Council can, independently of the Mayor, adopt a budget of its own."

The issue arises under these circumstances. The Mayor gave

---

1. The City Council of the City and County of Denver is composed of 13 members.

notice, held hearings and prepared a proposed budget for the year 1972; the budget was then submitted to Council, all as required by charter. Section A6.8. In compliance with A6.9 of the charter, the Council, by motion, "cause[d] to be published a notice showing that such budget is open for inspection by the public," and would be considered for adoption by Council on November 1, 1971. The Council minutes reflect that on Monday, November 1, 1971, Council reviewed the Mayor's proposed budget, but did not "revise, alter increase or decrease any of the items" contained in the proposed budget. On November 8, 1971, the second Monday in November, at a regular meeting of the Council, a motion to approve the Mayor's budget was defeated 7-5, one member absent.

At the November 8 meeting, by the same 7-5 vote, the Council approved its own budget. Subsequently an appropriation ordinance conforming to the Council's budget was passed by an 8-5 vote. At this juncture the declaratory judgment action was filed to determine the validity of the Council's action. Actually, the only change Council attempted was to reduce expenditures 2% across the board.

Central to the issue is the whole charter scheme as to budget procedures. However, in the interest of time, only Section A6.9-1, *supra,* will be set forth in full in this opinion. Reference has been made to Section A6.8-1, *et seq.,* regarding the Mayor's duties and responsibilities. After it receives the budget from the Mayor "on or before the last Monday in October," Section A6.9 requires the Council to give notice of public hearings.

As noted above, the Council adopted its own budget by a simple majority vote. It claims that only where it attempts to amend the Mayor's budget is it required to meet the two-thirds vote requirement of Section A6.9-1. It further contends that budgeting is a *legislative* function, solely within the power of Council.

In their brief the appellants contend "that the budget is a legislative act and budgeting is a legislative procedure and the exercise of the power to budget is a legislative power." They

also maintain that the order of the court would be, if carried out, an improper delegation to the Mayor of the legislative power vested by Article XX of the Colorado Constitution in the Denver City Council.

Section A6.10 provides that the Council shall enact an ordinance appropriating funds not to exceed those fixed in the budget adopted by Council. It concludes:

". . . The income as anticipated in the budget, and as provided by the tax levy ordinance, shall be allocated in the amounts and according to the funds specified in the budget for the purpose of meeting the expenditures authorized by the appropriation ordinance."

Article XX, Section 6 of the constitution, vested the people of each home rule city with the power to make, amend, add to or replace its charter, "which shall be its organic law and extend to all its local and municipal matters. The budgeting of its anticipated revenue for the operation of the city government is strictly a matter of local and municipal concern.

The Council argues that Article XX, section 4 of the constitution giving "[t]he council . . . power to fix the rate of taxation on property each year for city and county purposes," takes from the Mayor the power to perform any of the functions in the procedures which lead up to the tax levy. In other words, the budget preparation process is legislative in nature and can only be done by the legislative branch of government, the City Council.

It does not follow from the fact that the culmination of the budget process — the adoption of the budget, the appropriation of money to fund the budget and the fixing of the tax levy — is legislative, that the preparation of the budget is legislative. *Bell v. Assessors of Cambridge,* 28 N.E.2d 1 (1940); *Collins v. City of Schenectady,* 10 N.Y.S.2d 303 (1939). Here, the people have not attempted to label the function, but they have clearly placed the responsibility for the preparation of the budget on the Mayor.

Council further argues that "the power of the Mayor under the Denver Charter is administrative and exclusively adminis-

trative."

Prior to the adoption of Article XX of the constitution in 1902, the powers of the mayor and council were divided as they are today. Among the provisions of the first charter (compilation of 1881) we find 18 sections delineating the duties and responsibilities of the mayor. Section 17 provides:

"Every resolution passed by the City Council, which appropriates exceeding three hundred dollars, and all ordinances, before either shall take effect, shall, . . . be presented to the Mayor for his approbation. If he approve it, he shall sign it, if not, he shall return it with his objections in writing, to the City Clerk, who shall present the same at the next meeting of the City Council, who shall enter such objections upon their record, and, if the Council be of the opinion the ordinance or resolution ought to pass, may proceed to reconsider the same, *and if after such reconsideration, two-thirds of the Aldermen elect shall agree* and pass the same, said ordinance or resolution shall take effect as if the Mayor had signed it . . . . The Mayor may exercise the veto power, delegated in this section, to the entire annual appropriations ordinance, or to any separate appropriation in the same." (Emphasis added.)

At that time the powers of the City Council included:
"Sec. 40. . . . subject to the provisions hereinafter named, the general management and control of the finances . . . and shall likewise have power . . . ."

\* \* \*

"*Second* — To appropriate money and provide for the payment of debts and expenses of the city."

\* \* \*

"Sec. 60. During the last quarter of each fiscal year, the Mayor shall present to the Council a detailed estimate of the moneys necessary to defray the expenses of the city government for the next fiscal year, and for this purpose may require from officers at the head of the different departments of the city government, *including chairman of council committees,* detailed statements of the probable expenses to

be incurred in their departments. As soon thereafter as possible, the City Council shall pass an annual appropriation ordinance for the next fiscal year, appropriating certain definite sums of money to defray the expenses incident to each department of the city government, *based upon the estimate of the Mayor,* but not of necessity governed by it . . . ." (Emphasis added.)

Other sections limited the appropriation ordinance to anticipated revenue and expenditures to the amounts appropriated, just as does Section A6.9-1 of the present charter.

In the intervening years there have been changes in the type of government in Denver, but the same basic philosophy as to the budgeting and appropriation of the City's funds has persisted. It thus appears clear that no matter what characterization is given to the function of budget making, *it is one the people have delegated to the Mayor.* This constancy of intent, without any apparent challenge as to constitutionality over a period of almost 100 years is a persuasive consideration in upholding the validity of the assignment to the Mayor of the responsibility for budget preparation.

The scheme of fiscal management and responsibility outlined in the present charter seems to be a logical descendant of the scheme which was devised in the first charter. Section A6.8 imposes on the Mayor the responsibility of preparing the budget. As the chief executive officer, he is responsible on a day-to-day basis for the management and operation of every department, agency and program of the City; and the Mayor and his cabinet "shall formulate the general administrative policies of the City and County." The successful performance of the services and the programs depend upon the proper allocation of the funds available. These duties were not delegated to the Council. Council's arguments find no support historically nor in reason. Because the citizens of Denver have consistently through the years assigned budget preparation to the Mayor, there it must remain until they make a change.

Although the people of Denver have, by charter, delegated budget preparation responsibilities to the Mayor, this does

not mean that he has unbridled discretion in the ultimate production which is submitted to the Council. Sections A6.7 and A6.8 direct the Mayor to prepare a budget calendar and procedures for the preparation of the budget and directs how the budget is to be prepared. It specifies what the budget must include and among other provisions limits budget expenditures to estimated opening balances and anticipated income. Section A6.8-1. There are numerous other guidelines which the Mayor is compelled to follow.

The detailed requirements of budgeting which the people spelled out in the charter must be complied with in the preparation of the budget. Here the Council attempted to decrease the budget by an overall 2% reduction of all items of expenditure. The charter, as set forth above, specifically provides for the accomplishment of this objective, wherein it authorizes Council to "decrease the items as it shall deem necessary," but only by "a vote of two-thirds (2/3) of the members thereof." Section A6.9-1. Where the Council fails or refuses to act on the proposed budget, either by approving it by a majority vote, or failing or refusing to "revise, alter, increase or decrease the items as it shall deem necessary" by a two-thirds vote, the Mayor's budget becomes the operating budget by operation of law. The City must have funds to operate and the failure or refusal of the Council to perform its charter obligation cannot be permitted to create a crisis.

The *legislative* function of Council begins after the budget is submitted. It "shall by motion cause to be published a notice showing that such budget is open for inspection by the public," in order that any interested taxpayer may object.

Section A6.9-1, set forth in full above, requires the Council to review the budget and after review, it "may revise, alter, increase or decrease the items as it shall deem necessary." This gives the Council by a two-thirds vote absolute control over the budget which is ultimately adopted and the one which controls the appropriation ordinance. *The power is with the Council, placed there by the people.* There is nothing unreasonable in requiring that any changes be adopted by more than a majority of the members.

Council also attempts to support its position by "construction." However, the construction contended for is so tortuous that this opinion will not be further lengthened to discuss it. Suffice it to say that the language of the charter provisions is so clear that there is no room for construction. *General Elec. v. Webco Const.,* 164 Colo. 232, 433 P.2d 760. Also, the words in the charter have been interpreted, as contended for by the City, by practice over many years and it seems incredible at this late date that there can be a difference of view. *Commonwealth v. Pommer,* 330 Pa. 421, 199 A. 485.

That part of the declaratory judgment of the trial court that the Mayor's budget is the only budget authorized by the charter, and that Council may revise, alter, increase or decrease the items as it shall deem necessary, but only upon a vote of two-thirds of the members of the Council, is affirmed.

MR. JUSTICE DAY not participating.