CITY OF COLORADO SPRINGS, a municipal corporation, and Board of Trustees of the Firemen's Pension Fund of The City of Colorado Springs, Plaintiffs-Appellants,

v.

The STATE of Colorado, Defendant-Appellee.

No. 79SA206.

Supreme Court of Colorado, En Banc.

Dec. 15, 1980.

As Modified on Denial of Rehearing March 23, 1981.

Gordon D. Hinds, City Atty., Jackson L. Smith, and Robert M. Isaac, Deputy City Attys., Colorado Springs, for plaintiffs-appellants.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., R. Michael Mullins, Asst. Atty. Gen., Denver, for defendant-appellee.

LOHR, Justice.

The City of Colorado Springs (city) and the Board of Trustees of the Firemen's Pension Fund of the City of Colorado Springs commenced this action against the State of Colorado seeking a declaratory judgment with respect to the obligations of the city and the state to contribute to the funding of the city's firemen's pension fund. The trial court granted summary judgment in favor of the state. We reverse that judgment.[1]

A brief review of the recent history of legislation relating to the funding of policemen's and firemen's pension funds is necessary for an understanding of the issues presented in this case. Prior to the enactment of the Policemen's and Firemen's Pension Reform Act (Pension Reform Act) in 1978, sections 31–30–801 to 807, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.), funding of the city's firemen's pension fund was provided for in section 31–30–503, C.R.S. 1973 (1977 Repl.Vol. 12). Section 31–30–503 states in pertinent part:

"There shall be levied and set apart by the governing body of each city or city and county having a population of over one hundred thousand and a paid fire department, for the benefit of said fund, a tax for each year of ten cents on each one hundred dollars of valuation for assessment of taxable property in such city or city and county [*i. e.*, a one mill tax]. All collections made from said tax levies; ... and all such sums as the treasurer of said funds may receive from the state of Colorado as said city's or city and county's share of the state insurance tax as provided for in section 31–30–404 shall be paid into the fund."

That statute is part of C.R.S. 1963, 139–80–1 to 21, amended and now codified at sections 31–30–501 to 523 (1977 Repl.Vol. 12) (1980 Supp.) ("Firemen's Pension Act"), which provides for a state system of retirement and disability pensions for paid fire department personnel in cities having a population of more than one hundred thousand.

In 1970 Colorado Springs adopted an ordinance which established a firemen's pension plan for city firemen. The Colorado Springs pension plan did not include certain cost of living and wage increase adjustments to pension payments. The Firemen's Pension Act mandated such adjustments.

A declaratory judgment action was brought on behalf of certain classes of beneficiaries of the city's firemen's pension plan, seeking to have all provisions of the Colorado Springs ordinance in conflict with the Firemen's Pension Act declared invalid. *Huff v. Mayor and City Council of Colorado Springs*, 182 Colo. 108, 512 P.2d 632 (1973). The city argued that the Firemen's Pension Act was actuarially unsound and that C.R.S. 1963, 139–80–3, placed a confiscatory burden on the city and its taxpayers. (C.R.S. 1963, 139–80–3, is currently codified with minor amendments at section 31–30–503, C.R.S. 1973 (1977 Repl.Vol. 12), quoted in part above.) The city reasoned that the Firemen's Pension Act would eventually require the city to contribute more money than the prescribed one mill tax would generate.

---

1. This appeal was transferred to this court from the court of appeals pursuant to section 13–4–110(1)(a), C.R.S. 1973, because the constitutionality of a statute is in question. *See* section 13–4–102(1)(b), C.R.S. 1973.

**1124**

This court found those provisions of the Colorado Springs ordinance which were in conflict with the Firemen's Pension Act to be invalid, but stated that the city need not fear an impending confiscatory burden because the Firemen's Pension Act limited the city's liability to one mill. *Huff v. Mayor and City Council of Colorado Springs, supra.* In acknowledging such a limitation on the city's liability, this court recognized that the Firemen's Pension Act may eventually require funds in addition to the one mill contribution in order to pay prescribed pension benefits, but did not reach the question of how the pension fund was to be maintained when additional contributions should be needed.

In January 1978 the Colorado Legislative Council Committee on Fire and Police Pensions (committee), after conducting a study of local policemen's and firemen's pension funds, reported to the General Assembly that policemen's and firemen's pension funds statewide had estimated unfunded accrued liabilities of approximately $500,-000,000.[2] The committee recommended that the legislature pass an act that would require full funding of policemen's and firemen's pension funds to cover both the unfunded accrued liabilities and the current annual service costs of pension benefits attributable to active members. Pursuant to that recommendation, in 1978 the legislature passed the Pension Reform Act which incorporated the committee's recommendation requiring full funding of policemen's and firemen's pension funds.[3]

The Pension Reform Act requires annual contributions, beginning January 1, 1979, in amounts "equal to or greater than the sum of the actuarially determined amount required to amortize, over a period of not more than forty years from January 1, 1979, the unfunded accrued liabilities of such plan and the current service cost attributable to active members." Section 31–30–804(2), C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). Section 31–30–804 makes certain provisions for lower contributions in early years to minimize undue initial hardship.

The Pension Reform Act does not specifically state who is to be liable for funding

2. *Colorado Legislative Council Research Publication No. 229, Fire and Police Pensions,* 1977 at 4.

3. The Pension Reform Act was considered to be of an interim nature pending design of a more complete remedy for the perceived problems of pension funds. *Colorado Legislative Council Research Publication No. 229, Fire and Police Pensions,* 1977 at 8. To stimulate design of a more complete remedy, a repealer, effective January 1, 1981, was included in the Pension Reform Act. Colo. Sess. Laws 1978, ch. 98, 31–30–807 at 452. That repealer was in turn repealed, section 31–30–807, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.), upon the adoption of sections 31–30–1001 to 1016, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.), providing a comprehensive plan for funding member benefits. Although the 1979 legislation was not before the trial court because it had not yet been signed by the governor, it has been cited in the briefs. Because of the impact of the 1979 legislation on the practical effect of our opinion in this case, we quote the legislative declaration, section 31–30–1001, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.):

"31–30–1001. Legislative declaration. The general assembly hereby declares that the establishment of policemen's and firemen's pension plans in this state is a matter of statewide concern which affects the public safety and general welfare, that the ability of pension funds to pay earned benefits to present and future members is a necessary corollary to the establishment of pension plans, and that a statewide pension plan which establishes pension benefits which can be fully funded with local moneys will permit the continuation of pension plans for policemen and firemen in this state. In addition, the general assembly declares that any pension plan must be actuarially sound in order to assure the security of the pension system and that this part 10 is enacted to provide for the stability and security of policemen's and firemen's pension plans in this state. The general assembly further declares that state moneys provided to municipalities and fire protection districts do not constitute a continuing obligation of the state to participate in the ongoing normal costs of pension plan benefits, except for state funding of death and disability benefits as specified in this part 10, but are provided in recognition that said local governments are currently burdened with financial obligations relating to pensions in excess of their present financial capacities. It is the intent of the general assembly in providing state moneys to assist said local governments that state participation decrease annually, terminating at the earliest possible date."

the pension funds. However, in 1979, the legislature stated that the pension funds were to become fully funded with local moneys. Sections 31–30–1001 and 1014, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.).[4]

In granting summary judgment for the state in the instant case, the trial court concluded that the Pension Reform Act places the burden of meeting actuarial deficits in the pension fund upon the city without mandatory state assistance. It also concluded that such legislative action does not violate Article XV, Section 12, of the Colorado Constitution, prohibiting certain retrospective legislation.

The substantive questions presented for review are (1) whether the legislature intended to hold the city solely liable for funding the unfunded accrued liabilities and for paying the annual current service costs of pension benefits attributable to active members; (2) whether the legislature constitutionally could require the city to be solely liable for funding the unfunded accrued liabilities; and (3) whether the legislature constitutionally could require the city to be solely liable for paying the prospective annual current service costs of pension benefits attributable to active members. First, we shall address question (1). Before addressing questions (2) and (3), we must consider whether the city has standing to raise those questions.[5]

## I.

The state argued and the trial court found that it was the intent of the legislature in the Pension Reform Act to hold the city fully liable for funding the unfunded accrued liabilities of the pension fund and

for paying the annual current service costs of pension benefits attributable to active employees.[6] We agree.

Although the Pension Reform Act does not specifically state that the city will be solely liable for making the pension funds actuarially sound,[7] it is apparent that this was the legislative intent. The Pension Reform Act states that contributions to achieve actuarial soundness shall include "municipal and special district contributions, the established employee contribution, and any state contribution." (Emphasis added.) Section 31–30–804(1), C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). Minimum and maximum contribution rates for employees are set forth in section 31–30–804(8)(a)(I), C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.), but section 31–30–804(8)(a)(II), C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.), provides that the governing body of a municipality may establish a rate of employee contribution lower than the minimum set forth in the statute if, among other things, the lower rate would meet the minimum funding requirements necessary to achieve actuarial soundness. Thus, the governing body of the municipality has control over the amount of the employee contribution up to the prescribed maximum. It is reasonable to conclude that the governing body of the municipality has been given this control because it alone is responsible for making the fund actuarially sound and is thus in the best position to determine what amount the employees must pay if actuarial soundness is to be achieved as required.

The only other specified source of contribution to the pension funds is the state. The state's contribution is specifically char-

4. That statute was not before the trial court. See note 3, supra.

5. We choose to treat the standing question as one encountered at the threshold of our consideration of the constitutional issues. See part II of this opinion. Any question which might be raised as to the city's standing to seek a declaratory judgment with respect to legislative intent reflected in the Pension Reform Act (question (1) above) is also resolved by our discussion of standing in part II.

6. The trial court's ruling speaks of "actuarial deficits." We construe this to include deficiencies in contributions to annual current service costs as well as unfunded accrued liabilities.

7. A pension fund is said to be actuarially sound if there are no unfunded accrued liabilities and the current service cost of pension benefits attributable to active members is being paid on an annual basis.

acterized as "*any* state contribution" (emphasis added). It is apparent from this language that no obligation was imposed on the state to contribute amounts necessary to achieve actuarial soundness. At the present time state contributions and the allocation and distribution of such contributions are prescribed by section 31–30–1014, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). This section is part of a statute which explicitly expresses the legislative intent to decrease state participation annually and to terminate such participation at the earliest possible date. Section 31–30–1001, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.).

If the Pension Reform Act were construed not to require that the city be solely liable for making the pension fund actuarially sound, it would be impossible to determine what percentage must be paid by each contributor to achieve actuarial soundness. Furthermore, such a construction would not provide a workable system for making pension funds actuarially sound, as the legislature expressly intended. *See* section 31–30–804(2)(a), C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.). It is a basic tenet of statutory construction that we should presume a legislative intent which is reasonable and which will afford a remedy to the problem the legislature has recognized. *Dekelt v. People*, 44 Colo. 525, 99 P. 330 (1908); *see* sections 2–4–201 and 203, C.R.S. 1973.

■ The city argues that the one mill limitation on the city's contribution, section 31–30–503, C.R.S. 1973 (1977 Repl.Vol. 12), remains in effect notwithstanding the enactment of the Pension Reform Act. This argument is untenable. Section 31–30–804, C.R.S. 1973 (1977 Repl.Vol. 12) (1980 Supp.), fully treats the subject of funding firemen's pension funds beginning January 1, 1979. It is irreconcilable with a one mill limitation on contributions by the city. Section 31–30–804 of the Pension Reform Act has a later effective date than section 31–30–503. Therefore, section 31–30–804 prevails. Section 2–4–206, C.R.S. 1973.

## II.

■ The city asserts that the legislature cannot constitutionally impose upon it the obligation for unfunded accrued liabilities or the obligation to pay prospective annual service costs of pension benefits attributable to active members of the city's firemen's pension fund. Before reaching these constitutional questions, we must decide whether the city has standing to raise them.[8] Although the parties did not suggest this threshold issue, we requested that it be briefed. After review of the briefs, we conclude that the city has the requisite standing.

We recently considered the question of standing in a somewhat different context in *Denver Urban Renewal Authority v. Byrne*, Colo., 618 P.2d 1374 (1980). There, the Denver city auditor declined to sign an agreement between Denver and the Denver Urban Renewal Authority (DURA) on the basis, among others, that the agreement was unconstitutional. The agreement provided that tax revenues to be derived from assessments on property within an urban renewal project would be allocated to amortize bonds used to finance project improvements, to the extent that such revenues are based upon the increased property value resulting from the project improvements. We found that the test of standing announced in *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977), and reaffirmed in *Dodge v. Department of Social Services*, Colo., 600 P.2d 70 (1979), was applicable, *i. e.*, "[t]he proper inquiry on standing is whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." *Wimberly v. Ettenberg, supra*, 194 Colo. at 168, 570 P.2d at 539. In *Denver Urban Renewal Authority*, we found injury in fact because the challenged agreement arguably would result in lower property tax income to Denver's general fund. We also found that Denver had a

---

**8.** No contention has been made that the other plaintiff, the board of trustees of the pension

fund, has standing to raise these issues.

legally protected interest because it is a home rule city, constitutionally vested with the full right of self-government in both local and municipal matters. *Colo.Const.* Art. II, § 6. Collection and distribution of ad valorem tax revenues being local matters, *see Colo.Const.* Art. XX, § 6 g, the constitution itself was found to be the source of a legally protected interest in Denver because the agreement impinged on Denver's taxation powers.

The present case is analogous to *Denver Urban Renewal Authority* on the question of standing. Colorado Springs is a home rule city. Although the establishment of firemen's pension plans is of statewide concern, *Conrad v. City of Thornton*, 191 Colo. 444, 553 P.2d 822 (1976); *Huff v. Mayor and City Council of Colorado Springs, supra*, the extent to which a home rule city must provide financial support for such a plan is a question intimately involving city budgeting and the assessment and collection of taxes for municipal purposes. These are local and municipal matters. *See Colo. Const.* Art. XX, § 6 g; *City and County of Denver v. Blue*, 179 Colo. 351, 500 P.2d 970 (1972). A home rule city is not inferior to the General Assembly with respect to local and municipal matters. *Denver Urban Renewal Authority v. Byrne, supra; Four-County Metropolitan Capital Improvement District v. Board of County Commissioners*, 149 Colo. 284, 369 P.2d 67 (1962). The magnitude of the financial consequences to the city which will result from resolution of the issues in this case is not insubstantial by any standard.[9] The extent of the city's obligation to fund its firemen's pension plan has obvious implications for the moneys which can be budgeted for purely local and municipal purposes. To hold that no injury in fact would result to the city's constitutionally protected interests in budgeting and taxation if the state's position in this case were adopted by this court would be to ignore realities of local government. Under these circumstances, we conclude that the city has standing to challenge the constitutionality of the legislation at issue in this case. *See Denver Urban Renewal Authority v. Byrne, supra; cf. Dodge v. Department of Social Services, supra* (taxpayers and citizens of Colorado have standing to assert that use of public funds to finance nontherapeutic abortions violates *Colo. Const.* Art. V, § 33).

9. In oral argument, counsel for the city estimated the unfunded accrued liabilities of the Colorado Springs firemen's pension plan to be $15,-

## III.

Having found that the city can challenge the constitutional validity of the legislation and that the legislature did intend to make the city liable with respect to the unfunded accrued liabilities, we must now decide if the legislature could constitutionally impose such liabilities on the city.

Article XV, Section 12, of the Colorado Constitution states:

"*Retrospective laws not to be passed.* The general assembly shall pass no law for the benefit of a railroad or other corporation or any individual or association of individuals, retrospective in operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past."

The issue we must decide is whether the Pension Reform Act is unconstitutional because it imposes a "new liability" on the city "in respect to transactions or considerations already past" by requiring the city to pay unfunded accrued liabilities, or whether the Pension Reform Act is constitutional because the city has always been solely liable to fund the pension fund.

We treat here the funding of statutorily-mandated benefits only. Many municipalities have voluntarily supplemented the required benefits. *See Final Report on Policemen's and Firemen's Pensions in Colorado*, submitted to the state auditor and the Colorado General Assembly by consultants John A. Meininger and The Martin E. Segal Company, Inc., April 3, 1978, at p. 30. The record in this case does not establish whether Colorado Springs has done so. In the absence of specific facts with respect to any such supplemental benefits in Colorado Springs' firemen's pension plan, the question of whether the city is financially obligated to pay unfunded accrued liabilities created as a result of such supplemental benefits is not before us, and we do not decide it. *See McNichols v. Police Protective Association of Denver*, 121 Colo. 45, 215 P.2d 303 (1949), *overruled on a point not relevant here, Police Pension and Relief Board v. Behnke*, 136 Colo. 288, 316 P.2d 1025 (1957) (Art. XV, Section 12, of the Colorado Constitution does not prevent a municipality from voluntarily creating its own liability in respect to transactions or

000,000. It is alleged in the complaint that such unfunded liabilities are accruing at the rate of $1,000,000 per year.

considerations already past). Furthermore, on the record before us we must assume that if the city is liable for unfunded accrued liabilities for statutorily-mandated benefits, that liability is based solely on the statutes. There is no indication that Colorado Springs has any contractual obligation to its firemen having any source independent of the statutes. *See generally, Conrad v. City of Thornton*, 191 Colo. 444, 553 P.2d 822 (1976); *Police Pension and Relief Board of the City and County of Denver v. McPhail*, 139 Colo. 330, 338 P.2d 694 (1959).

Accrued liabilities for payments from a pension fund relate to "transactions or considerations already past." They are based upon work performed by employees in the past and are properly viewed as a form of compensation for that past work. *See Final Report on Policemen's and Firemen's Pensions in Colorado*, submitted to the state auditor and the Colorado General Assembly by consultants John A. Meininger and The Martin E. Segal Company, Inc., April 3, 1978, at p. 4. The more substantial issue is whether a "new liability" is purportedly imposed.

The district court found that the Pension Reform Act is constitutional because it does not impose a "new liability." In reaching this conclusion, the court found that, in section 31-30-503 of the Firemen's Pension Act, the legislature intended that the city would be solely responsible for funding the pension fund. The court noted that in the past the legislature has changed the contributions which municipalities were required to make to their pension funds. It therefore concluded that the one mill contribution required of the municipality pursuant to section 31-30-503 was not a limitation on the municipality's contribution but rather described the minimum contribution the municipality must make.

We cannot agree with this reasoning. The fact that the contribution required of municipalities has been frequently changed in the past simply reflects the legislative recognition that the pension fund, as it existed at the time the legislature increased the contribution, needed additional money. It was within the legislative power to change the amount it would require municipalities to contribute for pension fund obligations not based on transactions or considerations already past[10]. But the fact that the legislature increased the mandatory municipal contribution in the Pension Re-

10. Part IV, *infra.*

form Act does not mean that the legislature intended in section 31-30-503 that the city should be totally financially responsible for the pension fund. This court has previously interpreted section 31-30-503 as limiting the city's liability to one mill. *See Huff v. Mayor and City Council of Colorado Springs, supra.* As noted earlier, in *Huff* we did not reach the question of how the fund was to be maintained once additional contributions were needed, but it is certain that this court did not find in section 31-30-503 a legislative intent that the city would be liable for fully funding the firemen's pension fund. Upon a further review of section 31-30-503, we find no such legislative intent.

The legislative history indicates no contrary conclusion. Firemen's pension funds in cities having a population of more than 100,000 were first statutorily required by Colo. Sess. Laws 1903, ch. 172 at 447. The funding sources were specified to be a tax "not exceeding" 0.1 mill on property within such a city; employee contributions; fines imposed on firemen; and rewards, fees and proceeds of gifts or emoluments relating to fire department services. The "not exceeding" language was dropped in 1935. Colo. Sess. Laws 1935, ch. 117 at 429. No state support for firemen's pension funds was provided until enactment of Colo. Sess. Laws 1917, ch. 75 at 235.

Beginning in 1903 and continuing until the statute was amended and reenacted to effect substantial changes in 1947, Colo. Sess. Laws 1947, ch. 317 at 868, it was specifically contemplated that the prescribed funding might not prove adequate to pay the benefits provided by statute. During those years the adverse consequences of any such shortage fell upon the beneficiaries. Colo. Sess. Laws 1903, ch. 172 at 451 provided:

> "Sec. 9. If at any time there shall not be sufficient money in such pension fund to pay each person entitled to the benefits thereof the amount per month as herein provided, then an equal percent of such monthly payments shall be made to each beneficiary until the said fund shall be replenished to warrant the payment in full to each of said beneficiaries."

That provision was expanded in 1945 by addition of the following sentence: "No annuitant shall be entitled to reimbursement for the sums deducted from his annuity after the replenishment of such fund." Colo. Sess. Laws 1945, ch. 247 at 704.

Beginning with the 1947 revisions and continuing until adoption of the Pension Reform Act in 1978 our statutes made no provision for the eventuality that the required contributions to the fund might prove inadequate to pay prescribed benefits. It is interesting to note that when the legislature wishes to require payments from a municipality's general fund where a pension fund treasury is inadequate to pay prescribed benefits, it has done so in unmistakable terms. *See* section 31–30–603, C.R.S. 1973 (1977 Repl. Vol. 12) (relating to policemen's pension funds in cities having a population over 100,000.) That provision has been little changed since its enactment in 1913. *See* Colo. Sess. Laws 1913, ch. 120 at 443.

■ Because we find that the legislature in section 31–30–503 did not intend that the city would be liable for funding the firemen's pension fund beyond one mill per annum, we conclude that the Pension Reform Act unconstitutionally imposes on the city a "new liability" in violation of Article XV, Section 12, of the Colorado Constitution to the extent that the Act requires the city to contribute an amount in excess of that which could be collected based on an assessment of one mill for any year up to January 1, 1979.

IV.

We next address the question whether the legislature constitutionally could require the city to be solely liable for paying the prospective annual current service costs of pension benefits attributable to other members.

■ Colorado Springs is a home rule city and, under Article XX of the Colorado Constitution, the people of Colorado Springs have exclusive control over "local and municipal matters." But the city is also an agency of the state for the purpose of government. *People v. McNichols*, 91 Colo. 141, 13 P.2d 266 (1932); *see Keefe v. People*, 37 Colo. 317, 87 P. 791 (1906). With respect to matters of statewide concern, home rule cities are subject to state legislation. *Century Electric Service and Repair, Inc. v. Stone*, 193 Colo. 181, 564 P.2d 953 (1977). In *Huff v. Mayor and City Council of Colorado Springs, supra*, we stated that protection of property, of which fire protection is an obvious example, is of basic and fundamental importance to all citizens of the state. We further recognized that intelli-

gent and skilled individuals are needed to fight fires and that, to attract such individuals, the fire department must compete with industry and other service professions. This requires a reasonably competitive pension plan. We concluded that the establishment of pension plans for firemen is a matter of statewide concern. It is therefore apparent that, as the legislature declared, the enactment of the Pension Reform Act was "in the exercise of the police powers of this state for the purpose of protecting the health, peace, safety, and general welfare of the people of this state." Section 31–30–802, C.R.S. 1973 (1977 Repl. Vol. 12) (1980 Supp.).

■ This court previously has held that, in the absence of a constitutional limitation, the legislature may impose a liability on a city to fund the implementation of legislation treating matters of statewide concern. *See People v. McNichols, supra*. No constitutional limitation is involved in the instant case. Accordingly, we hold that the Pension Reform Act is constitutional to the extent that it requires municipalities to be liable, commencing January 1, 1979, for the prospective annual current service costs of pension benefits attributable to active members, as necessary to achieve actuarial soundness of pension plans.

This conclusion, however, does not end our inquiry as to the effectiveness of the Pension Reform Act requirement that municipalities must bear such prospective annual service costs. We must consider finally whether the constitutionally imposed burden for payment of annual service costs is severable from the unconstitutional requirement that municipalities must pay unfunded accrued liabilities.

V.

The legislature has treated the severability question specifically in the final section of the Pension Reform Act, section 31–30–806, C.R.S. 1973 (1977 Repl. Vol. 12) (1980 Supp.) as follows:

"If any provision of this part 8 is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of this part 8 shall be deemed invalid, it being the intent of the general assembly that the provisions of this part 8 are so essentially and inseparably connected with and so dependent upon each other that each is incomplete and incapable of being executed independent of the others."

The legislative intent could not be more free from doubt. Notwithstanding the intrinsic constitutionality of the requirement that municipalities bear prospective annual service costs of firemen's pension funds, that requirement is invalid because expressly declared not to be severable from the unconstitutional mandate that municipalities pay unfunded accrued liabilities of such funds.

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion, including appropriate proceedings to determine whether Colorado Springs' firemen's pension plan includes benefits additional to those mandated by statute and, if so, to determine the existence, validity, extent and timing of the city's obligation to fund those benefits.