No. 17,373.

WAGGENER *v.* HOLT CHEW MOTOR CO.

(274 P. [2d] 968)

Decided October 11, 1954.   Rehearing denied November 1, 1954.

Messrs. MEANS, MEANS & ROBERTS, Mr. STANLEY H. JOHNSON, for plaintiff in error.

Messrs. SHUTERAN, ROBINSON & HARRINGTON, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties hereto occupy the same positions here as in the trial court. Mark S. Waggener, hereafter referred to by name or as plaintiff, filed his complaint against Holt Chew Motor Co. Inc., hereinafter referred to as Holt Chew or lender, alleging that in October, 1952 he borrowed from Holt Chew the sum of $65,000, securing payment thereof by the execution of a deed of trust on real estate in El Paso County, Colorado; that said indebtedness was represented by Waggener's promissory note which provided monthly installments of principal and interest at two per cent per month on balances due. Plaintiff made installment payments of principal and interest on said indebtedness to and including May 23, 1953, so that on said date there remained due on said obligation, according to its terms, the sum of $29,000. Plaintiff alleged as a condition precedent to the making of said loan defendant demanded and received from plaintiff $2,500 for "additional expenses, demands and services in addition to the interest provided for in said promissory note." Plaintiff further alleged that Holt Chew was engaged in the business of making loans of money upon security and was not on October 23, 1952 licensed by the State of Colorado, pursuant to chapter 108 S.L. Colo. 1913. Plaintiff alleged he had paid $3,980 excess interest on said loan and claimed he was entitled to three times the total of such alleged overpayment of interest and the $2,500 for additional expenses and services, which amounts he prayed be applied on the balance of $29,000 claimed to be due on said note, and plaintiff offered to make payment of such balance and demanded a release of the deed of trust. It is not denied that plaintiff paid a total of $3,890 interest in excess of one per cent per month on said loan.

Depositions of witnesses were taken and certain affidavits filed in the trial court, following which both plaintiff and defendant filed motions for summary judgment. The trial court entered summary judgment in

favor of defendant, and plaintiff brings the cause here by writ of error.

Chapter 108, S.L. Colo. 1913 governs the matters involved in the instant case. We have so held in *Sullivan v. Siegal,* 125 Colo. 544, 245 P. (2d) 860 and *Dowd v. Labor Finance Corporation,* 100 Colo. 512, 69 P. (2d) 305.

The pertinent portions of the 1913 Act are:

"Sec. 1. That hereafter it shall be unlawful, without first procuring the license hereinafter provided for, to engage in the business of making loans of money or of personal credit, on any security of any kind, direct or collateral, tangible or intangible, upon which there is directly or indirectly charged or received interest, discount or consideration greater than twelve per centum per annum."

Sec. 5 of the Act provides: "That no person shall *charge* or receive a greater rate of interest upon any loan or upon any unpaid balance after any partial payment on any loan made by him than two per centum per month on the actual amount of the loan, and this *charge* shall cover all expenses, demands and services of every character, including notarial and recording fees and charges, except upon the foreclosure of the security."

Section 7 of the Act provides: "Every person who, for any loan or forbearance shall have paid or delivered any greater *sum or value* than is above allowed to be received, may, by himself, or by his personal representative, recover in an action in any court of competent jurisdiction against the person who shall have *taken or received* the same, or against his personal representatives, treble the amount of the money so paid or value delivered above the rates aforesaid, together with costs * * *."

Section 8 of the Act provides: "The phrase 'engage in the business of making loans' as used herein shall be taken to apply to and include every person who shall make any loan of money or of personal credit upon any

security whatsoever where the rate of interest, discount, or consideration *charged* is greater than twelve per centum per annum." (Emphasis supplied.)

In *Waddell v. Traylor,* 99 Colo. 576, 64 P. (2d) 1273, we had occasion to pass upon the 1913 Act. There we held that the note was unenforceable as to interest in excess of the amount permitted by the statute. The maker of the note did not demand treble damages. In discussing section 7 of the 1913 Act, we said: "The provisions in the act, that treble the interest paid, if in excess of the rates specified, may be recovered, and that a violation of the act shall be a misdemeanor, amounts, we think, to a declaration of public policy that *a contract for payment of interest in excess of the specified rate shall not be enforceable as to such excess * * *."* (Emphasis supplied.)

It is admitted that on October 28, 1952 the State Bank Commissioner received an application from Holt Chew for a license pursuant to chapter 108, S.L. Colo. 1913, dated October 22, 1952 (the day before the loan was made) and that said license was issued on November 28, 1952.

It appears from the depositions and affidavits on file in this cause that plaintiff advised his counsel William Hedges Robinson he was in need of a loan of $65,000 and asked Robinson if he could assist in procuring such a loan. Plaintiff said he had an opportunity to get the loan provided he paid two per cent per month interest; that he was reluctant to pay this rate of interest; that Robinson later advised plaintiff he thought he could get the loan and that the interest rate would not exceed ten per cent per annum. Robinson said his fee would be $1,000 if he found a lender. Plaintiff authorized Robinson to go ahead with the matter and after some delay plaintiff was called to the law office of Shuteran, Robinson and Harrington for the purpose of closing the loan. Mr. Robinson was not present and the closing of the loan was handled by Mr. Shuteran, counsel for Holt Chew. Wag-

gener was advised by Mr. Shuteran the interest would be at the rate of twenty-four per cent per annum, and that the firm of Shuteran, Robinson and Harrington were making a charge of $2,500 for their services, which sum included $750 to be paid to L. E. Shuteran, a real estate broker and father of attorney Shuteran, for finding the lender. Other incidental items were included in the total of $2,500 paid by plaintiff to the law firm. The $65,000 check of defendant was left with Mr. Shuteran and he did not deliver it to plaintiff until his firm received the $2,500 from plaintiff.

The trial judge concluded from the depositions and affidavits before him that Holt Chew did not receive any part of the $2,500 represented by the check delivered to Mr. Shuteran by plaintiff before the $65,000 represented by the note and deed of trust was released. The law firm which acted in this instance for both Waggener and the lender are not parties to this action. It may be that Waggener has a cause of action against this firm, as suggested by the trial judge. The trial judge having reached the conclusion that no part of this $2,500 was paid over to defendant in error, or by him specified as a condition for making the loan, we hold that Waggener is not entitled to reimbursement from Holt Chew for any portion thereof.

The 1913 Act provides that the Bank Commissioner may issue a license, which license when granted shall be effective on the first day of the month in which it is approved.

It is contended by counsel for defendant in error that, "No interest or principal was paid by plaintiff nor received by the defendant on the loan until November 21, 1952, and at that time and at the time of all subsequent payments of interest the defendant was licensed under the 1913 loan act," hence it is argued that the loan was in compliance with section 7 of the act and "is not voidable or usurious."

Every legislative Act must be construed to ef-

fectuate, if possible, the intent of the lawmaking body. To arrive at the legislative intent we must consider not only section 7, but also sections 1, 5 and 8 of the Act. Section 1 makes it unlawful to engage in the business of making secured loans at a rate of interest greater than twelve per cent per annum without first procuring the requisite license from the State Bank Commissioner. Section 8 extends the provisions of the Act to every person who "shall make any loan of money * * * upon any security whatsoever where the rate of *interest, discount or consideration charged* is greater than twelve per centum per annum." Nothing in this section speaks of the receipt or delivery of the excess interest. Section 5 of the Act declares that "no person shall *charge* or receive a greater rate of interest * * * than two per centum per month * * * and this *charge* shall cover all expenses, demands and services of every character, including notarial and recording fees and charges, except upon the *foreclosure of the security.*" It is there declared that the lender shall not *charge* a greater remuneration for any purpose than two per centum per month.

All of these charges patently refer to the time the loan is made. No such interest charges in excess of one per cent per month may be made without the issuance of the requisite license to the lender.

█ Defendant in error not having procured the license at the time the loan was made, violated the Act and made a charge which by the terms of the Act was unlawful. *Waddell v. Traylor, supra.* The subsequent issuance of the license could not make lawful that which on the date of the loan was unlawful. We are at a loss to understand why the General Assembly provided that the effective date of the license should be the first day of the month in which the license is issued. It is evident that no license is issued until the official approves the application therefor, and we see no logical reason authorizing the ante-dating of the license.

We come now to section 7 of the Act. This section

must be read and considered together with all the other provisions contained in this legislation. In section 7 we find the words "any greater sum or *value*," and, also, "treble the amount of the money paid *or value delivered* above the rate aforesaid." (Emphasis supplied.)

Had the General Assembly intended to limit the recovery to "money so paid" the words "or value delivered above the rate aforesaid" would not have been inserted in the enactment. The word "value" is twice used in this section and must be given a meaning consistent with the general intent and purpose of this Act. The value or thing of value delivered in the instant case was the note and the deed of trust which secured it. Thereby Waggener agreed to pay, and it is admitted that Holt Chew Motor Co. Inc. insisted on interest at twenty-four per cent per annum. Notwithstanding the somewhat inartistic phraseology used in the act, we are convinced that it was the legislative intent to permit recovery under section 7 if the rate of interest specified was greater than twelve per cent per annum and the lender did not have the requisite license at the time the note and deed of trust were delivered. Our conclusion is fortified by the terms of section 8 where the term "consideration charged" is used.

In *Benham v. Heyde,* 122 Colo. 233, 221 P. (2d) 1078, we quoted from *Dow v. United States,* 154 F. (2d) 707, as follows: "The statutory requirement to obtain a license before engaging in the trade is a police regulation for the protection of the public, *Smith v. American Packing & Provision Co.,* 102 Utah 351, 130 P. (2d) 951; a penalty is provided for the violation of the statutory exaction; and it is the well settled general rule that in ordinary circumstances, a contract entered into by an unlicensed person in controvention of the statutory provisions of this kind will not be enforced."

Valid contracts may not arise out of transactions forbidden by law. The illegality inhering at the incep-

tion of such contracts taints them throughout and effectually bars enforcement.

We must conclude that since the contract which defendant made without first procuring a license was enforceable only as to the principal and interest at twelve per cent per annum. The lender thereafter could not lawfully collect more than twelve per cent per annum interest, whether subsequently licensed or not. The fact that defendant was on November 28, 1952 granted a license effective November 1, 1952 could have no legal effect upon the contract made on October 23, 1952, nor upon the remedies for excess charges given plaintiff by the terms of the statute.

In *Cheney v. Overmyer,* 64 Ida. 213, 129 P. (2d) 978, it was held: "Where usurious interest has been reserved and charged, as herein admitted, three times the amount of such interest is forfeited by the lender to the borrower. This forfeiture is clearly affirmative, not merely negative, hence may be offset against both principal and interest, and if more than the balance due, to give effect to such affirmative forfeiture, judgment therefor should be entered in favor of the borrower, as was correctly done herein." In support of this ruling several cases are cited in the opinion.

In the instant case we hold that Waggener is entitled to have judgment entered in his favor for treble the amount by him paid as excess interest, and that such payment be credited on his note and deed of trust, and that upon payment by him of the balance remaining due, he have a release of the deed of trust.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in favor of Waggener for $11,940 and costs, and that he have credit on his note and deed of trust for this amount.