**FRONTIER EXPLORATION, INC., Plaintiff–Appellant,**

v.

**AMERICAN NATIONAL FIRE INSURANCE COMPANY, Defendant–Appellee.**

No. 92CA0012.

Colorado Court of Appeals, Div. I.

Dec. 17, 1992.

Rehearing Denied Feb. 11, 1993.

Rothgerber, Appel, Powers & Johnson, Franklin D. O'Loughlin, Brian J. Spano, Denver, CO, for defendant-appellee.

Opinion by Judge DAVIDSON.

Plaintiff, Frontier Exploration, Inc., (Frontier) appeals from the judgment entered on a jury verdict in favor of defendant, American National Fire Insurance Company, (American) on American's counterclaims for fraudulent representation and fraudulent concealment. We affirm in part and reverse in part and remand with directions.

On March 13, 1988, a specialized truck equipped with seismic equipment owned by Frontier was damaged in an accident, and thereafter, Frontier made a claim for the losses against its insurer, American. On April 6, 1988, representatives for Frontier and American met to discuss Frontier's claim. During that meeting American discussed a payment to Frontier of $175,050—$72,050 for repairs by out-of-state companies on the truck and the seismic unit, $8,000 to transport the truck and unit to the places of repair, and $100,000 for two-months rental of replacement equipment while repairs were being effected, minus a $5,000 deductible for the total claim.

On April 21, American paid $117,050 of the $175,050 to Frontier. Frontier, instead of applying the moneys as was discussed at the April 6th meeting, expended only $77,-174.38 to upgrade a used truck and to repair the seismic unit, all accomplished by Frontier at a cost less than the repair estimates obtained by American. When American learned that Frontier had neither leased any equipment nor sent the damaged truck and seismic unit off-site for repair, it refused to pay the $58,000 balance.

Frontier then brought this action against American to recover damages, including the $58,000, for breach of contract, promissory estoppel, and bad faith breach of insurance contract. American counterclaimed for, *inter alia*, fraudulent representation and fraudulent concealment.

The primary issue at trial was whether this $175,050 total represented a cash-out

Tobey & Pelz, P.C., Harlan P. Pelz, Charles E. Stuart, Denver, CO, for plaintiff-appellant.

settlement which Frontier alleged the parties had agreed to at the April 6th meeting or whether, as American asserts, the payment was intended to be only for damages and losses actually incurred by Frontier.

The jury returned a verdict against Frontier on all of its claims and in favor of American for false representation and nondisclosure or concealment. It awarded to American $117,050 for the fraudulent concealment and the court entered judgment in that amount.

## I.

Frontier first contends that the trial court erred by directing a verdict in favor of American on Frontier's promissory estoppel claim. Specifically, it argues that, contrary to the trial court's findings, Frontier established a *prima facie* case and that, therefore, the court erred by taking the question from the jury. We disagree.

## A.

■ Initially, we note that when the court is a trier of fact, as it is in regard to equitable claims, a motion denominated a "motion for directed verdict" is actually a motion to dismiss pursuant to C.R.C.P. 41(b). In ruling on such a motion, the standard is not whether the evidence, when viewed in the light most favorable to plaintiff, established a *prima facie* case, *see Gossard v. Watson*, 122 Colo. 271, 221 P.2d 353 (1950), but whether judgment in favor of defendant is justified on the evidence presented. *Campbell v. Commercial Credit Plan, Inc.*, 670 P.2d 813 (Colo.App. 1983); C.R.C.P. 41(b) ("the plaintiff has shown no right to relief").

Here, in directing the verdict against Frontier, the trial court assumed that promissory estoppel, although it is an equitable claim, was properly a question for the jury. Then, viewing the evidence in the light most favorable to plaintiff, the trial court dismissed such claim on the ground that Frontier had not established a *prima facie* case. *Compare Mead Associates, Inc. v. Antonsen*, 677 P.2d 434 (Colo.App. 1984) *with Snow Basin, Ltd. v. Boettcher & Co.*, 805 P.2d 1151 (Colo.App.1990).

■ The parties do not argue any reversible error regarding the standard applied by the trial court. Moreover, the directed verdict standard—in which all evidence must be viewed in the light most favorable to the plaintiff—is less exacting than that under C.R.C.P. 41(b), *see Conrad v. City & County of Denver*, 656 P.2d 662 (Colo. 1982), and inures to the benefit of plaintiff. Thus, in addressing Frontier's contention, we will assume the correctness of the standard applied by the court. *Central City Opera House Ass'n v. Brown*, 191 Colo. 372, 553 P.2d 64 (1976) (if the trial court found that the plaintiff had not established a *prima facie* case, it follows that the court of necessity was ruling that plaintiff was not entitled to recover under the evidence).

## B.

■ By the doctrine of promissory estoppel, a promise is binding on a promissor if the promisee relies to his detriment on that promise and the promissor should reasonably have expected the promise to induce action or forbearance in reliance thereof. To be entitled to relief, a party must show that, to its detriment, it changed its position in justifiable reliance on the promise of another. *City of Sheridan v. Keen*, 34 Colo.App. 228, 524 P.2d 1390 (1974).

■ Here, viewing the evidence in the light most favorable to Frontier, we find that there was evidence of a promise by American to settle Frontier's claim for $175,050 which Frontier believed could be used in any manner it chose. Based on that representation, Frontier alleged in its complaint and presented testimony to support that it then "proceeded with a different course than the insurance company had been outlining up to that date, and that was to convert the truck." Accordingly, Frontier decided not to repair the damaged truck, not to send the seismic unit out-of-state for repair, and not to rent any replacement equipment. Instead, it proceeded to convert the used truck and to repair the seismic equipment at a total cost of

$77,174.38—less than the $80,050 that American estimated for repairs and considerably less than the $117,000 actually paid to it by American. Thus, it expended less than it was paid by American.

Frontier argues also that its change in position caused it to forego business interruption coverage. However, $100,000 of the $175,050 was for the lease of replacement equipment during the repair period in accordance with that policy provision, and Frontier decided not to rent the equipment after it received the $117,050. Further, insofar as Frontier implies that because of its change of position it incurred loss of income during downtime, the record does not in any way support this assertion.

Thus, there was no showing of a detrimental change of position, and consequently, we agree with the trial court that Frontier did not establish a *prima facie* case of promissory estoppel.

## II.

Frontier next contends that there was no evidence of Frontier's intent to deceive or of American's justifiable reliance on undisclosed facts. It argues, therefore, that the jury's verdict on American's counterclaims of false representation and nondisclosure or concealment cannot stand. We disagree.

■ When sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole, and in the light most favorable to the prevailing party, is sufficient to support the jury's verdict. *Kogan v. People*, 756 P.2d 945 (Colo.1988); *City of Aurora v. Loveless*, 639 P.2d 1061 (Colo.1981). It is the right of the jury to determine the credibility of witnesses and the weight to be afforded evidence and to draw all justifiable inferences of fact from the evidence. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

False representation requires, *inter alia*, an intent to deceive by the one making the representation and justifiable reliance by the one to whom the representation is made. *See CJI–Civ. $3rd* 19:1 (1989); *For-*

*syth v. Associated Grocers of Colorado, Inc.*, 724 P.2d 1360 (Colo.App.1986). Nondisclosure or concealment requires proof of these same elements. *See CJI–Civ. 3rd* 19:2 (1989); *Ackmann v. Merchants Mortgage & Trust Corp.*, 645 P.2d 7 (Colo.1982).

■ Fraud and reliance may be inferred from circumstantial evidence. *Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599 (Colo.1984).

■ Here, the evidence reveals that, during the time Frontier was negotiating its claim with American, Frontier did not disclose to American that it had purchased a used truck; that it had decided to upgrade this truck rather than repair the damaged truck; that it was repairing the seismic unit itself; that it, therefore, was not incurring transportation costs on either the truck or the unit; and that it intended not to lease any replacement equipment for use during the repair period.

The record shows that Frontier was aware that American's $175,050 total was specifically based an $80,050 estimate for repairs and transportation charges. It knew also that American, under the insurance policy, was obligated to pay only the least among repairs, replacement, or property value. Yet, Frontier accepted the $117,050 partial payment, signed a Sworn Proof of Loss representing that it had incurred those losses, and then proceeded to upgrade a different vehicle and to fix the unit at a considerable savings without telling American of the cost differential.

Moreover, over a three-week period, Frontier responded to American's request for written quotes on replacement units, attended a meeting specifically to explain to American why four replacement units, rather than only one, was needed, and signed the Sworn Proof of Loss. However, it did not disclose to American that it had not leased such units and did not intend to do so.

On this record, even in light of Frontier's argument that it thought the $117,050 was part of a cash-out settlement and that it could use the funds as it pleased, the jury was entitled to believe that Frontier inten-

tionally concealed these facts in order to deceive American.

■ We also disagree with Frontier's contention that the record does not support that American relied on the undisclosed facts. American's representatives testified that American intended the $175,050 to pay for actual losses and that knowledge of certain undisclosed facts "would have affected the amount of the claim" it paid to Frontier. There was further testimony that without the Sworn Proof of Loss, American would not have paid $117,050 to Frontier.

■ Finally, insofar as Frontier argues that American was not justified in its reliance, we disagree. Frontier was required under the policy to cooperate in the investigation or settlement of any claims. It also signed the Sworn Proof of Loss stating that it had not concealed any material facts. Thus, contrary to Frontier's argument, the jury could have found that American was justified in believing that Frontier had disclosed all material information during the course of the investigation of the claim.

Because the evidence, when viewed in the light most favorable to the prevailing party, supports the jury's verdict, we will not disturb that verdict on appeal. *See Tuttle v. ANR Freight System, Inc.*, 797 P.2d 825 (Colo.App.1990).

### III.

Frontier's next two contentions concern the award of $117,050 and prejudgment interest to American on its counterclaim of concealment.

### A.

■ We disagree with Frontier's contention that the trial court erred by giving instructions based on *Northwestern National Insurance Co. v. Barnhart*, 713 P.2d 1360 (Colo.App.1985), which permitted American to recover all payments made to Frontier.

In *Barnhart*, this court held that, if an insurance policy contains a fraud clause

and an insured intentionally conceals or misrepresents any material fact for the purpose and with the intention of deceiving the insurer and inducing the insurer to pay more insurance than the amount of the loss sustained, then the insurance policy is void and the insurer is released from its obligation under that policy. *See Western Assurance Co. v. Bronstein*, 77 Colo. 408, 236 P. 1013 (1925).

The instructions in question state:

### INSTRUCTION NO. 56

In the event that you find that Plaintiff made a false statement as to the amount of the loss sustained for the purpose and with the intention of deceiving the Defendant to pay more insurance than the amount of the loss sustained, then the insurance contract between Plaintiff and Defendant is void. In that event, the Defendant is released from its obligation under the insurance contract and is entitled to a return of all sums paid to Plaintiff.

### INSTRUCTION NO. 57

If you find in favor of the Defendant on its claims of false representation or non-disclosure/concealment, you shall award as its actual damages insofar as they have been proved by a preponderance of the evidence:

[The] total amount of $117,050.00 paid by Defendant to Plaintiff pursuant to the insurance policy.

We conclude that these instructions accurately state the law under *Barnhart* and further that, contrary to Frontier's argument, the instructions were appropriate in light of the evidence presented.

Here, the insurance policy contained a fraud clause which provided that:

CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you relating to it. It is also void if you intentionally conceal or misrepresent a material fact concerning [this] Coverage Part.

American presented evidence, and the jury found, that Frontier falsely represented or concealed certain material facts which induced American to pay $117,050—more than the $77,174.38 loss actually incurred.

Therefore, under *Barnhart*, American was released from its obligation, and it was appropriate for damages to include the entire $117,050 paid to Frontier.

### B.

Frontier contends that, even if the damage award of $117,050 was proper, American was not entitled to prejudgment interest on the entire amount. Specifically, Frontier argues that to the extent the damage award included at least $77,174.38 in actual losses incurred by Frontier, the award represented a penalty against Frontier. Frontier asserts that since a penalty is punitive in nature, and since prejudgment interest may not be assessed on punitive damages, the trial court's award of prejudgment interest was improper. We disagree.

 The right to interest, independent of an agreement to pay it, is statutory. *Isbill Associates, Inc. v. City & County of Denver*, 666 P.2d 1117 (Colo.App. 1983). Prejudgment interest is authorized by § 5–12–102, C.R.S. (1992 Repl.Vol. 2) when money or property has been "wrongfully withheld." Such interest may be assessed on a tort judgment, to the extent that it represents money or property wrongfully withheld, because the defendant has had the use, and the plaintiff has not, of those amounts. *See Coale v. Dow Chemical Co.*, 701 P.2d 885 (Colo.App. 1985).

 Whether a particular factual circumstance falls within the terms of the prejudgment interest statute is a question of law. *Colorado Performance Corp. v. Mariposa Associates*, 754 P.2d 401 (Colo. App.1987).

 Punitive, or exemplary, damages are available only pursuant to statute, *Seaward Construction Co. v. Bradley*, 817 P.2d 971 (Colo.1991), and prejudgment interest is not allowed on such damages. *Coale v. Dow Chemical Co., supra.*

 Here, the jury was instructed that, if it found that Frontier had made a false statement, then the insurance contract was void, and American was released from its obligations and was entitled to a return of "all sums paid" to Frontier. Accordingly, the jury awarded $117,050 in damages—the amount American had paid to Frontier under the contract of insurance.

We reject Frontier's argument that prejudgment interest here is improper because these damages "qualify as punitive damages." To the contrary, with respect to American's counterclaims of fraud against Frontier, the jury was not instructed regarding, nor did it render a verdict on, exemplary damages.

Frontier argues, nonetheless, that the damages are a penalty because Frontier was required to forfeit undisputed losses. Frontier contends, therefore, that prejudgment interest should not apply because (1) these damages are in the nature of punitive damages and (2) it cannot have "wrongfully withheld" this sum which represents its actual losses under the policy. We disagree.

We reiterate that the damages award was based on a finding by the jury of fraudulent concealment and on a provision in the insurance policy to which the parties bound themselves. That provision states that coverage as to a particular claim is void in circumstances of Frontier's fraud. Simply stated, because of its fraudulent conduct, Frontier was uninsured as to this claim and had no entitlement to reimbursement of its losses by American.

Accordingly, in order to make American whole, *see Great Western Sugar Co. v. Pennant Products, Inc.*, 748 P.2d 1359 (Colo.App.1987), the jury awarded American the sum which it had paid to Frontier and to which Frontier had no right. Moreover, American was deprived of, and Frontier had the benefit of, interest earnings on that money from the time payment was made.

In sum, we conclude that Frontier "wrongfully withheld" the $117,050 from American and that the trial court did not err by awarding prejudgment interest on the entire amount.

## IV.

Frontier's final contention is that the trial court erred by awarding to American $948.06 in costs related to the discovery deposition by Frontier of one of American's former regional managers. We agree.

■ Expenses of taking depositions prior to trial for ordinary discovery purposes are normally not allowed as items of costs. *Shultz v. Linden–Alimak, Inc.*, 734 P.2d 146 (Colo.App.1987). However, any costs of taking depositions for the perpetuation of testimony may be includable. *Weber v. Wallace*, 789 P.2d 427 (Colo.App.1989); § 13–16–122, C.R.S. (1987 Repl.Vol. 6A).

■ Moreover, if the testimony of the person whose deposition is taken is not available at trial, and the deposition is offered in lieu thereof, then the court has discretion to assess the expense of procuring the deposition against the losing party. *Morris v. Redak*, 124 Colo. 27, 234 P.2d 908 (1951); *Shultz v. Linden–Alimak, Inc., supra* (award proper where witness died after deposition and in trial data certificate deposition listed to be used at trial in lieu of testimony); *Dorrance v. Family Athletic Club*, 772 P.2d 667 (Colo.App.1989) (proper where experts not available for trial and testimony perpetuated by means of depositions).

■ Here, the deposition was taken by Frontier. Counsel for American attended the deposition, and in so doing incurred travel expenses, but asked no questions of the deponent. At trial, the court allowed Frontier to use the witness' deposition to impeach another witness. Then, because of an objection by American under CRE 106 for completion of the record, portions of the deposition were read to the jury as direct testimony in Frontier's case-in-chief.

The court made no finding that the deposition was taken for the perpetuation of testimony. Frontier contends that it took the deposition for discovery purposes only, and there is nothing in the record to indi-

cate that American intended otherwise. The first and only time that American asserted that the deposition was taken for the perpetuation of testimony was in its verified bill of costs.

Moreover, although American argues on appeal that the witness was "a California resident, who was unavailable for trial," it did not argue nonavailability at trial and, in fact, listed him as a live witness in its trial data certificate. Importantly, the trial court made no finding that the witness was not available. *See* C.R.C.P. 32(a)(3).

Accordingly, we conclude that the deposition was taken for ordinary discovery purposes and that the witness was not unavailable for trial. Thus, the costs of the deposition were not properly assessed against Frontier.

The judgment is affirmed in all respects, except as to the award of costs for the discovery deposition. That part of the judgment is reversed, and the cause is remanded to the trial court to modify its judgment in accordance with this opinion.

STERNBERG, C.J., and NEY, J., concur.