**WEIZE COMPANY, LLC, Plaintiff–Appellee and Cross–Appellant,**

**and**

**Martz Supply Co., Intervenor–Appellee and Cross–Appellant,**

**v.**

**COLORADO REGIONAL CONSTRUCTION, INC., Defendant–Appellant and Cross–Appellee.**

**No. 09CA1369.**

Colorado Court of Appeals, Div. V.

June 10, 2010.

Vernon A. Evans, Golden, Colorado, for Plaintiff–Appellee and Cross–Appellant.

DiGiacomo, Jaggers & Perko, LLP, Gerald H. Jaggers, Douglas J. Perko, Arvada, Colorado, for Intervenor–Appellee and Cross–Appellant.

Lansky, Weigler & Porter, P.C., Wendy E. Weigler, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge WEBB.

In this construction dispute, plaintiff, Weize Company, LLC, and plaintiff-intervenor, Martz Supply Company, raise claims for breach of contract, to foreclose a mechanics' lien, and under section 38–22–127, C.R.S.2009 (trust fund statute). Following a bench trial, the court dismissed the lien foreclosure claim for failure to record a lis pendens and awarded damages against defendant, Colorado Regional Construction, Inc. (CRC), on the other two claims. Both sides appealed. We affirm, reinstate the trial court's order awarding 12% prejudgment interest on treble damages awarded under the trust fund statute, and remand for further proceedings on attorney fees.

## I. Facts

CRC, a general contractor, hired Weize as plumbing subcontractor. Martz provided plumbing materials to Weize. After Weize had completed all of the underground plumbing and some of the above-ground plumbing, CRC replaced it with a different plumbing subcontractor.

When CRC failed to pay Weize for the completed work, it recorded mechanics' liens against the project and commenced this action. Martz intervened, joining in the claims for breach of contract and lien foreclosure.

It added a claim against CRC for treble damages and attorney fees under the trust fund statute. The trial court allowed CRC to substitute bonds for the liens, which were released.

## II. Master Plumber Licensure

CRC first contends the trial court erred by precluding its defense that all claims were barred because Weize's principal, John Neiberger, was not licensed as a master plumber nor did Weize employ a master plumber on the project. We disagree.

CRC relies on section 12–58–105, C.R.S. 2009, which provides, as relevant here:

(1) No person shall engage in or work at the business, trade, or calling of a residential, journeyman, or master plumber in this state until he has received a license from the division of registrations . . . .

(3) . . . In order to act as a plumbing contractor, the person, firm, partnership, corporation, association, or other organization must either be, or employ full-time, a master plumber, who shall be in charge of the supervision of all plumbing work performed by such contractor.

See *Carter v. Thompkins*, 133 Colo. 279, 282, 294 P.2d 265, 266 (1956) (limiting recovery by a plumber to services and materials for which a license was not required; "[c]ontracts for services by one who is required by statute to have a license . . . and who does not have such a license are generally unenforceable").

The trial court made no finding whether Weize violated this provision. For the following reasons, we conclude that CRC is not entitled to reversal, even if Weize failed to comply with section 12–58–105.

### A. Standing

■ We first reject CRC's contention that because lack of licensure rendered the contract illegal, Weize did not have standing.

■ Standing is a jurisdictional limitation that can be raised for the first time on appeal. *Anson v. Trujillo*, 56 P.3d 114, 117 (Colo.App.2002). It requires that a claimant have suffered actual injury to a legally protected interest. *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo.2004). Such an interest "may be tangible or economic such as . . . one arising out of contract." *Id.* (internal quotations omitted).

CRC's standing argument relies solely on *Potter v. Swinehart*, 117 Colo. 23, 184 P.2d 149 (1947) (action by wholesale purchaser should have been dismissed because defendant-seller not licensed to sell liquor at wholesale). The supreme court observed, "[s]ince plaintiff seeks relief under the terms of an illegal contract, he has no standing in the courts of this state." *Id.* at 28, 184 P.2d at 152.

*Potter* does not include any analysis of standing. The cases on illegal contracts cited in *Potter* do not refer to standing. *Potter* has never been cited for the proposition that illegal contracts implicate standing. *Carter* did not mention standing. More recent Colorado cases presented with such contracts do not refer to standing. *See, e.g., Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1251 (Colo.1996) (illegal contracts are void as against public policy); *Equitex, Inc. v. Ungar*, 60 P.3d 746, 750 (Colo.App.2002) (same). Thus, we conclude that the statement is dicta, "which is not binding on us." *See McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 73 (Colo.App.2009).

CRC cites no other case from any jurisdiction, nor have we found one, rejecting a claim based on an illegal contract for lack of standing. Other jurisdictions treat an illegal contract as an affirmative defense, not a lack of standing.[1] We discern no reason to hold otherwise, and thus turn to CRC's arguments concerning illegality as an affirmative defense.

---

1. *See, e.g., Yoo v. Robi*, 126 Cal.App.4th 1089, 24 Cal.Rptr.3d 740, 749 (2005) (illegality of contract is affirmative defense which may be raised at any time); *Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 327 (Tex.App.1998) ("illegality, as an affirmative defense, is normally raised in connection with a contract that is invalid on its face"); *McCabe/Marra Co. v. Dover*, 100 Ohio App.3d 139, 652 N.E.2d 236, 241 (1995) ("illegality or invalidity of a contract is an affirmative defense that must be set forth in the pleadings or it is waived").

### B. Illegality as an Affirmative Defense

We need not address CRC's alternative contention that the trial court erred in holding illegality was insufficiently pled as an affirmative defense, because in the next subsection we conclude that the trial court properly struck all of CRC's affirmative defenses as a discovery sanction.[2]

### C. Sanctions

Weize moved to compel CRC to make initial disclosures three months after Weize and Martz had made their disclosures. When CRC did not respond, the trial court ordered it to submit initial disclosures by September 4, 2008.

On October 24, Weize requested the trial court to enter a default judgment because CRC had not yet made its disclosures. The court found that CRC was "in violation both of the Colorado Rules of Civil Procedure, and the Order of this Court issued on August 25, 2008," but declined to enter default judgment because:

> The Court finds the sanction advocated by Plaintiff to be exceptionally harsh for a pro se Defendant who now has counsel. The Court is happy to consider an intermediate sanction, if Plaintiff can suggest one which the Court finds reasonable.

CRC did not submit its disclosures until November 12. Weize and Martz then moved for limited sanctions. Again, CRC did not respond. The court struck all of CRC's counterclaims and affirmative defenses.

■ We review discovery sanctions for an abuse of discretion and will uphold the decision unless it is manifestly arbitrary, unreasonable, or unfair. *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009). "[T]he courts are given flexibility in choosing the appropriate sanction." *Nagy v. District Court*, 762 P.2d 158, 160 (Colo.1988). C.R.C.P. 37(c) permits striking affirmative defenses. The most extreme sanction is de-

fault judgment. *Trattler v. Citron*, 182 P.3d 674, 680 (Colo.2008); *see* C.R.C.P. 37(c).

■ This case is distinguishable from *Pinkstaff*, on which CRC relies, where the supreme court concluded that striking the answer and affirmative defenses was "tantamount to an entry of default judgment" because the sanction "effectively denie[d] [defendants] the opportunity to litigate the merits of the dispute." *Pinkstaff*, 211 P.3d at 703–04; *see also Nagy*, 762 P.2d 158, 162 ("it was a clear abuse of discretion for the trial court to impose a sanction equivalent to dismissal"). Here, CRC was able to challenge the value of labor and materials that Weize claimed to have furnished despite its affirmative defenses having been stricken.

CRC's argument that this sanction was disproportionate to its conduct because the trial court did not find prejudice is insufficient to show an abuse of the trial court's considerable "discretion in imposing sanctions for non-compliance with rules." *Pinkstaff*, 211 P.3d at 702–03. CRC cites no case, nor have we found one in Colorado, finding an abuse of discretion for striking affirmative defenses.

Unlike in *Trattler*, 182 P.3d at 679, on which CRC also relies, CRC violated a court order. Contrary to CRC's assertion, *Pinkstaff* does not diminish the significance of such a violation because the supreme court explained that although the trial court had found a violation of its order, "the court did not point to specific discoverable items that had not been disclosed or any particular portions of the court's September 10 order which had not been complied with." *Pinkstaff*, 211 P.3d at 701. And because violating a court order constitutes "a sufficient level of culpability for default," *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo. 1987), it also adequately supports the lesser sanction imposed here.

Where a party fails to meet disclosure deadlines, the burden is on the nondisclosing party to show that the failure was harmless.

**2.** Even if the contract was void ab initio, *see Waggener v. Holt Chew Motor Co.*, 130 Colo. 294, 300–01, 274 P.2d 968, 971 (1954) ("The illegality inhering at the inception of such contracts taints them throughout and effectually bars enforce-

ment."), the order striking affirmative defenses would still be dispositive. *Dinosaur Park Investments, L.L.C. v. Tello*, 192 P.3d 513, 516 (Colo. App.2008).

*Todd v. Bear Valley Village Apartments,* 980 P.2d 973, 978 (Colo.1999). But CRC failed to respond to the motion for limited sanctions. *See* C.R.C.P. 121 § 1–15(3) ("Failure of a responding party to file a responsive brief may be considered a confession of the motion."). Under these circumstances, we cannot hold that the court abused its discretion because it made no finding of prejudice to Weize or Martz.

Accordingly, we conclude that the trial court did not err in striking affirmative defenses.

## III. Trust Fund

CRC next contends the trial court erred in finding that it violated the trust fund statute, for two reasons. First, the record does not support rejecting CRC's good faith defense under subsection 2 of the trust fund statute; and second, substituting bonds for the liens released CRC from the requirement to hold funds in trust under subsection 3 of the trust fund statute. We reject both arguments.

The trust fund statute provides a framework for evaluating both the good faith and bonding defenses:

(1) All funds disbursed to any contractor or subcontractor ... shall be held in trust for the payment of the subcontractors, laborer or material suppliers ... who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

(2) This section shall not be construed so as to require any such contractor or subcontractor to hold in trust any funds ... if such contractor or subcontractor has a good faith belief that such lien or claim is not valid or if such contractor or subcontractor, in good faith, claims a setoff, to the extent of such setoff.

(3) If the contractor or subcontractor has furnished a performance or payment bond or if the owner of the property has executed a written release to the contractor or subcontractor, he need not furnish any such bond or hold such payments or disbursements as trust funds, and the provisions of this section shall not apply.

§ 38–22–127.

The trial court found a trust fund violation and rejected CRC's good faith defense as follows:

The Court finds CRC obtained control over funds from the owners; CRC knowingly used such funds; and such funds were to be held in trust under the construction trust fund statute, but were not. The evidence of CRC's bank account statements shows the bank account where the trust funds were deposited by CRC intermittently had negative balances, to a point in May 2008 where such account had a consistent negative balance....

Relative to contentions of good faith belief under § 38–22–127(2), the Court finds CRC knew by November 2007 when Weize filed its liens that Weize was claiming money owed to it by CRC, and CRC knew it owed Weize money, at least, at minimum, for the underground plumbing work Weize performed. The Court concludes the evidence does not support a good faith issue under § 38–22–127(2).

In denying CRC's motion to amend the judgment, the court supplemented its findings to reject the bonding defense:

[I]t is clear as of November 2007, that Defendant knows about Plaintiff's lien and has not held the required money in trust. [ ][T]he Court finds Defendant did not comply with C.R.S. 38–22–127(3) when Defendant filed a bond with this Court to release Plaintiff's lien on the property in question. The bond to release the lien filed by Defendant was not a performance or payment bond as required by C.R.S. 38–22–127(3).

### A. The Record Supports the Trial Court's Findings Rejecting CRC's Good Faith Defense

"[W]e defer to the trial court's findings of fact unless they have no support in the record." *Bd. of County Comm'rs v. Rohrbach,* 226 P.3d 1184, 1186 (Colo.App.2009).

■ Here, CRC does not dispute the findings concerning negative balances in its

account after Weize filed the liens. The evidence was undisputed that Weize had satisfactorily completed all of the underground plumbing. Thus, because CRC was indebted to Weize for at least the cost of this work, the negative balances support rejection of the good faith defense.

### B. A Lien Release Bond Is Not Equivalent to Payment or Performance Bonds

■ We review de novo the trial court's interpretation of subsection 3 of the trust fund statute, on which CRC relies. *Wells Fargo Bank v. Kopfman,* 226 P.3d 1068, 1072 (Colo.2010).

■ Subsection 3 exempts a contractor or subcontractor who has "furnished a performance or payment bond." Such bonds guarantee performance of obligations to the owner and prompt payment to subcontractors and suppliers. *General Electric Co. v. Webco Construction Co.,* 164 Colo. 232, 234, 433 P.2d 760, 761 (1967). In contrast, a bond filed in substitution of a mechanic's lien guarantees payment only "if the lien claimant shall be finally adjudged to be entitled to recover upon the claim upon which his lien is based." § 38–22–131(3), C.R.S.2009.

Because the legislature identified only payment and performance bonds in section 38–22–127(3), we must presume it intended to exclude lien release bonds from the exemption. *Lunsford v. Western States Life Insurance,* 908 P.2d 79, 84 (Colo.1995) ("when the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others"); *cf. In re Regan,* 151 P.3d 1281, 1287 (Colo.2007) ("If the General Assembly wanted lien claim procedures to apply to trust fund claims, it could have included lien claim procedures in the Trust Fund Statute .... [But][i]t did not.").

Accordingly, we conclude that CRC's lien release bonds did not support an exemption from the trust fund statute.

### IV. Treble Damages

Alternatively, CRC challenges the sufficiency of the evidence to support the trial court's treble damages and attorney fees award under sections 18–4–401 and –405, C.R.S.2009, for lack of evidence of CRC's state of mind. We discern no ground for reversal.

Subsection (5) of the trust fund statute provides that "[a]ny person who violates the provisions of subsections (1) and (2) of this section commits theft, as defined in section 18–4–401, C.R.S." According to section 18–4–401(1):

A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization ... and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit. ...

■ As concerns theft, the trial court found that:

Martz met its burden of showing the elements of theft by a preponderance of evidence under its third claim. The evidence that CRC paid corporate obligations and paid personal obligations of one of its principals with the trust funds shows the Court, and the Court finds, CRC handled the trust funds in a manner practically certain to deprive Weize of the use and benefit of the trust funds.

The record supports the findings concerning payment of personal obligations using trust funds in May of 2008. Because we have concluded that CRC's lien release bonds did not exempt it from the trust fund statute, CRC's conduct after having posted the bonds is relevant to liability for treble damages.

The findings are also consistent with *People v. Anderson,* 773 P.2d 542, 545 (Colo. 1989), which explained:

In the context of theft of construction project trust funds, the "knowingly using" element of mental culpability in subsection 18–4–401(1)(b) does not require a conscious objective to deprive another person of the

use or benefit of the construction trust funds, but instead requires the offender to be aware that his manner of using the trust funds is practically certain to result in depriving another person of the use or benefit of the funds.

*Accord In re Helmke*, 398 B.R. 38, 40–41 (Bankr.D.Colo.2008) ("When Defendants spent those funds for purposes other than payment for supplies and labor on the projects involved ... they ... used it in a manner that could have no other consequence than to deprive Plaintiff of the use and benefit of *those funds*.")(emphasis in original). Thus, CRC's depletion of the trust fund when it knew of Weize's liens supports the trial court's conclusion that CRC intended to deprive Weize of the funds.

## CROSS–APPEAL

### V. Lis Pendens

On cross-appeal, Weize and Martz contend the trial court erred in directing a verdict on Weize's lien foreclosure claim for failure to have recorded a lis pendens as required by section 38–22–110, C.R.S.2009. We discern no error.

The trial court found that CRC terminated Weize from the project in September 2007. Weize commenced this action in December 2007. Before year end, CRC substituted bonds for the liens and the court ordered the liens released. The trial court found "no evidence of a lis pendens being recorded," which Weize does not dispute.

In a bench trial, a motion for a directed verdict is considered a motion to dismiss under C.R.C.P. 41(b). *Frontier Exploration, Inc. v. American National Fire Insurance Co.*, 849 P.2d 887, 890 (Colo.App.1992). We review a trial court's grant of such a motion to determine "whether judgment in favor of defendant is justified on the evidence presented." *Id.* Where the underlying facts are undisputed, the issue becomes one of law, which we review de novo. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384 (Colo.1997).

### A. Bonding over a Lien Does Not Excuse Failure to Record a Notice of Lis Pendens

Section 38–22–110 provides:

No lien claimed by virtue of this article ... shall hold the property longer than six months after the last work or labor is performed ... unless an action has been commenced within that time to enforce the same, *and unless also a notice stating that such action has been commenced is filed for record within that time* in the office of the county clerk and recorder of the county in which said property is situate.

(Emphasis added.) This notice is understood to be "in the form of a lis pendens." *King v. W.R. Hall Transportation & Storage Co.*, 641 P.2d 916, 921 (Colo.1982). The lien claimant's burden of proof "includes the requirement of giving statutory notice." *Daniel v. M.J. Development, Inc.*, 43 Colo.App. 92, 94, 603 P.2d 947, 949 (1979). Failure to record a lis pendens defeats a lien. *Id.*

Where a statute is clear and unambiguous, our de novo review goes no further than its plain language. *Sheffield Services Co. v. Trowbridge*, 211 P.3d 714, 719 (Colo.App.2009). We may not "read a statute to create an exception that the plain language does not suggest, warrant, or mandate." *Bruce v. City of Colorado Springs*, 129 P.3d 988, 993 (Colo.2006) (internal quotations omitted). However, "we must avoid interpretations that lead to absurd results." *Department of Transportation v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo.App. 2008).

Whether section 38–22–110 requires a lien claimant to record a lis pendens although a bond has been substituted for the lien is an issue of first impression in Colorado. Weize argues that doing so is "superfluous" because proceeding against the bond cannot affect title, and thus the failure to record a lis pendens does not interfere with the goal of "render[ing] titles to real property and to interests and estates therein more safe, secure and marketable." *King*, 641 P.2d at 920.

We reject this argument because despite bonding, the validity of a lien would still be of

concern to a person interested in title to the liened property because the surety could become insolvent. In that event, "any lien claimant shall be entitled to enforce such lien claim in the same manner as if no bond had been filed." § 38–22–129(5), C.R.S.2009. Hence, if a lis pendens was not required, its absence could mislead a person seeking to obtain an interest in the liened property into concluding that even if the surety became insolvent, the property was not subject to a lien foreclosure action because the claimant here failed to comply with section 38–22–110. Ignoring the lis pendens requirement in a multiple lien case where no lis pendens was filed and the owner substituted a bond for only one lien would also produce the anomaly that only the claimant whose lien had been bonded could recover.[3]

Although they may transpire infrequently, these scenarios show that following the plain language is not absurd. *Department of Transportation v. City of Idaho Springs*, 192 P.3d at 494 (courts "will disregard unambiguous statutory language only when the resultant absurdity is so gross as to shock the general moral or common sense").[4] Nor can the plain language be ignored because sections 38–22–110 and 38–22–131 conflict. *See Bd. of County Comm'rs v. Hygiene Fire Protection Dist.*, 221 P.3d 1063, 1070 (Colo. 2009) ("[w]e must construe statutes addressing the same subject to avoid conflict"). After the owner or general contractor bonds over the lien, the claimant can still record a lis pendens.

Moreover, the pattern of legislative action with respect to section 38–22–110 weighs against implying an exception to the lis pendens requirement based on section 38–22–131.

When the mechanics' lien statute was originally enacted, the legislature created an ex-

ception to the lis pendens requirement by allowing a lis pendens recorded by one lien claimant to discharge this obligation for all other lien claimants joined in the same foreclosure action. Ch. 118, sec. 10, 1899 Colo. Sess. Laws 271–72; *see Riley v. People*, 104 P.3d 218, 221 (Colo.2004) ("The presence of one exception is generally construed as excluding other exceptions.").

In 1975, the legislature added section 38–22–131, which allows a bond to be substituted for a lien. Ch. 323, sec. 5, 1975 Colo. Sess. Laws 1425. We presume the legislature to have known of the lis pendens requirement under section 38–22–110 when it enacted section 38–22–131. *See Robbins v. People*, 107 P.3d 384, 389 (Colo.2005). At that time, the legislature could have amended section 38–22–110 to provide that a bond obviates any need for a lis pendens, but did not do so. Section 38–22–110 was amended in 2000. Ch. 68, sec. 9, 2000 Colo. Sess. Laws 210. Again, the legislature could have limited the lis pendens requirement based on bonding, but did not.

 Although "[t]he mechanics' lien act is equitable in nature, and should be liberally construed, [it] cannot by construction be extended to cases not within its provisions." *Skillstaff of Colorado, Inc. v. Centex Real Estate Corp.*, 973 P.2d 674, 676 (Colo. App.1998). Thus, it "should be strictly construed with respect to those acts necessary to perfect a lien and liberally construed as to provisions that are remedial in nature." *FCC Constr., Inc. v. Casino Creek Holdings, Ltd.*, 916 P.2d 1196, 1199 (Colo.App.1996). Because "a notice of lis pendens [is] a prerequisite to the establishment of a lien right even as against the owner of the property or as against one primarily liable for the debt upon which the lien is based," *Kalamath*

---

**3.** In other jurisdictions, a lien claimant must satisfy all requirements of a valid foreclosure action despite a bond having been substituted for a lien. *See, e.g., Hutnick v. U.S. Fidelity & Guaranty Co.*, 47 Cal.3d 456, 253 Cal.Rptr. 236, 763 P.2d 1326, 1330 (1988); *Ohio Plate Glass Co. v. Paskin*, 4 Ohio Misc. 136, 209 N.E.2d 640, 642 (Ohio.Ct.C.P.1965).

**4.** Weize's citation to *Lindt & Sprungli USA, Inc. v. PR Painting Corp.*, 292 A.D.2d 610, 740

N.Y.S.2d 369 (2002) ("When a lien is discharged by the filing of an undertaking, ... filing of a notice of pendency is unnecessary and is, in fact, prohibited by statute ...."), is inapposite. The New York statute explicitly provides "[w]here a lien is discharged by deposit or by order, a notice of pendency of action shall not be filed," N.Y. Lien Law § 17, thereby avoiding the redundancy at issue here by explicitly obviating the need for a lis pendens once a bond has been substituted.

*Investment Co. v. Asphalt Paving Co.,* 153 Colo. 109, 112, 384 P.2d 938, 940 (1963), this requirement must be strictly construed. *See also Williams v. Foster Frosty Foods, Inc.,* 497 P.2d 339, 340 (Colo.App.1972) (not published pursuant to C.A.R. 35(f)). Weize cites no case, nor have we found one, implying an exception to any express requirement to establish a mechanic's lien.

We are not persuaded otherwise by Weize's argument that requiring a lis pendens where the lien has been bonded over puts a lien claimant at risk of violating the spurious lien statute. § 38–35–201, C.R.S. 2009. This argument presumes bonding creates an exception to the lis pendens requirement. But under section 38–35–201(4)(a), a lis pendens "provided for by specific Colorado ... statute" is excepted from the definition of a spurious lien. Hence, such a lien claimant would be protected by the plain language of section 38–22–110.

Accordingly, we conclude that bonding did not excuse Weize from filing a notice of lis pendens.

### B. Judicial Notice Does Not Satisfy the Lis Pendens Requirement

■ Alternatively, Weize and Martz argue that the trial court "erred in not taking judicial notice of its file and of the admission in CRC's Answer to the Complaint in Intervention that CRC had itself recorded notice of the bonding furnished for the Project." They assert that had the court done so, this admission would have satisfied the lis pendens requirement.

CRC's answer "admits that CRC recorded appropriate notice pursuant to C.R.S. § 38–22–129(4) of a bond furnished for the Project." However, Weize and Martz do not direct us to anything in the record showing exactly what CRC recorded concerning the bonds. Hence, we can assume only that CRC recorded the information required by section 38–22–129(4):

> the filing for record of a notice executed by both the principal and all sureties acknowledging the existence of the bond furnished for such project and that said lien claimant is entitled to claim the benefits of said bond....

During closing argument, Martz requested that the trial court take judicial notice of

> its records and files in this case .... [which] provide proof that there was notice of this particular legal action filed of record or recorded in this case which is essentially the equivalent [of] giving notice of the action which is what a lis pendens is all about.

The court declined to do so, explaining

> I still don't think even with the extra evidence that plaintiff-intervenor tries to provide that the fundamental deficiency of the lis pendens has been overcome. The issue is over. Evidence is closed. [T]his court believes[ ] it's too late to take judicial notice of its own file once the evidence is closed and the court will not revisit the issue ....

In its findings of fact, the court reiterated that were it to take judicial notice as requested, it did "not think that even with the additional evidence, Martz could overcome the lis pendens deficiency." Hence, we need not address Weize and Martz's assertion that the judicial notice request was timely.

Under section 38–35–110(1), C.R.S.2009, a notice of lis pendens should "contain[ ] the name of the court where such action is pending, the names of the parties to such action at the time of such recording, and a legal description of the real property." Because some of this information is not required by section 38–22–129(4), our assumption that CRC recorded something compliant with that section does not establish satisfaction of section 38–35–110. Hence, we agree with the trial court that judicial notice of CRC's answer would not change the outcome.

Accordingly, we affirm dismissal of the lien foreclosure claim.

## VI. Prejudgment Interest Rate

On cross-appeal, Martz contends the trial court lacked jurisdiction to reduce the prejudgment interest rate on the trust fund award from 12% to 8% because its amended order was untimely. We agree, but express

no opinion on which is the correct interest rate.[5]

We review whether a trial court had jurisdiction to rule under C.R.C.P. 59 de novo. *Canton Oil Corp. v. District Court*, 731 P.2d 687, 693 (Colo.1987).

In its findings of fact and conclusions of law, the trial court ordered prejudgment interest to be calculated at 12%, citing 38–22–101(5), C.R.S.2009. On March 16, CRC timely moved to amend the judgment "pursuant to C.R.C.P. 59." It asserted that "interest under [§ 38–22–101(5) ] is only recoverable for mechanic's lien[ ] claims, not trust fund claims."

On May 24, sixty-nine days after CRC's motion was filed, the trial court:

> pursuant to Colorado Rules of Civil Procedure 59(a)(4)[,] grants Defendant's request to modify the pre-judgment interest rate on [Martz's] judgment on its third claim from twelve percent to eight percent. The twelve percent interest rate found in C.R.S. 38–22–101(5) only applies to mechanic's lien claims, not trust fund claims.

In another order issued on May 24, the trial court granted Weize and Martz's motion for sums certain plus costs, and "pursuant to ... C.R.C.P. 60(a)" ordered that "Plaintiff–Interven[o]r [ ] only collect interest at the rate of eight percent per annum on its judgment on its third claim." However, no motion for C.R.C.P. 60(a) relief had been filed.

Under C.R.C.P. 59(j), "[a]ny post-trial motion that has not been decided within the 60–day determination period shall, without further action by the court, be deemed denied for all purposes." Hence, "[a]ctions taken under C.R.C.P. 59 after the sixty-day period are outside the court's jurisdiction and are void." *De Avila v. Estate of DeHerrera*, 75 P.3d 1144, 1146 (Colo.App.2003). Therefore, here the trial court was without jurisdiction to enter the order amending the prejudgment interest rate.

CRC does not dispute that the sixty-day window for C.R.C.P. 59 relief had elapsed. Instead, it contends the trial court properly amended the judgment pursuant to C.R.C.P. 60(a) despite lapse of the deadline under C.R.C.P. 59(j). We are not persuaded.

C.R.C.P. 60(a) allows a court to correct "[c]lerical mistakes ... arising from oversight or omission ... at any time of its own initiative." However, "relief under C.R.C.P. 60(a) is limited to cases in which the trial court originally intended to make the award granted by corrective amendment." *Diamond Back Services, Inc. v. Willowbrook Water & Sanitation Dist.*, 961 P.2d 1134, 1136 (Colo.App.1997). Here, the trial court's reliance on C.R.C.P. 60(a) was erroneous because the correction was based on its statutory interpretation, not on a clerical mistake.

Accordingly, we conclude that the 12% interest rate awarded in the court's findings of fact and conclusions of law must be reinstated.

## VII. Martz's Request for Attorney Fees

Martz requests attorney fees on appeal under C.A.R. 39.5 and section 18–4–405, C.R.S.2009, which provides that the owner of "property obtained by theft ... may ... recover costs of the action and reasonable attorney fees...." We agree that Martz is entitled to recover the fees it incurred on appeal defending the trial court's award under the theft statute. *See Buder v. Sartore*, 774 P.2d 1383, 1391 (Colo.1989) (upholding Court of Appeals' award of attorney fees on appeal by analogy to trial court's grant of fees).

Accordingly, on remand, the trial court shall award Martz reasonable attorney fees apportioned to its successful defense of the theft award.

The judgment of the trial court is affirmed and the case is remanded for further proceedings consistent with this opinion.

Judge RUSSEL and Judge GABRIEL concur.

5. *See Weather Engineering & Manufacturing, Inc. v. Pinon Springs Condominiums, Inc.*, 192 Colo. 495, 502, 563 P.2d 346, 351 (1977).