**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UET RR, LLC,

      Plaintiff - Appellee/Cross-Appellant,

v.

BENJAMIN D. COMIS; K3B
PARTNERS, ULC; BARRY COMIS;
FALCON CREEK ASSET
MANAGEMENT, INC.; RKB
INVESTMENTS, LTD.; RICHARD K.
BRUGGER; K. TODD HICKS; VIERO
GROUP, INC.,

      Defendants – Appellants/
      Cross-Appellees,

and

TALANDA SYKES,

      Defendant.

Nos. 17-1200 & 17-1218
(D.C. No. 1:14-CV-01237-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In No. 17-1200, Defendants appeal the district court's award of damages in favor of plaintiff UET RR, LLC ("UETRR") on its fraud claims about railcar leases. Defendants argue a judgment UETRR obtained against Viero Energy, LLC ("Viero Energy"),[1] in a previous Texas state-court suit for breach of the leases precluded UETRR's claims.

In No. 17-1218, UETRR cross-appeals from the district court's dismissal of its declaratory judgment claim and the court's ruling that UETRR was entitled to prejudgment interest only from the date it demanded the return of its deposits and not the date it was fraudulently induced to pay them. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in No. 17-1200.

We affirm in part and reverse in part and remand for further proceedings in No. 17-1218.

## I. THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The district court conducted an eight-day bench trial and then issued findings of fact and conclusions of law, which we summarize below.

### A. *The Railcar Leases*

UETRR transported crude oil from the production site to oil refineries throughout the United States. Defendant Ben Comis, who negotiated railcar leases on behalf of Viero Energy, represented to UETRR that Viero was owned in equal shares by K3B Partners, ULC ("K3B"), and Minks, LLC—a company owned by

---

[1] Viero Energy was an affiliate of defendant Viero Group, Inc. Defendant K3B Partners, ULC owned both.

2

defendant Talanda Sykes.[2]  The court found that "K3B was the operating entity using the Viero Energy name," and "Ben Comis, [who was a shareholder and director of K3B], was acting for K3B in entering into the[] leases using the name Viero Energy." Aplt. App., Vol. 3 at 750. [3]

On February 19, 2013, the first railcar lease agreement was signed.  It obligated Viero Energy to deliver 120 tank cars—in two 60-car blocks—on or before June 1, 2013.  For its part, UETRR was to pay $624,000 immediately as a deposit to secure the lease.  On February 20, UETRR wired those funds to Viero Energy's bank account, which Mr. Comis and Mr. Sykes controlled.  That same day, Mr. Comis wired $472,800 to the bank account of SBG Transport, LLC ("SBG")—an Arkansas-based oilfield services company that had agreed to supply the railcars to Viero Energy.[4]  UETRR was led to believe that Viero Energy owned the railcars.  It was therefore unaware of SBG's role until discovery in this suit.

On March 19, 2013, the parties signed the second railcar lease agreement.  It called for the lease of 180 tank cars and a $936,000 deposit.  UETRR wired those funds to Viero Energy's bank account on March 21.  On March 25, Viero Energy

---

[2] Mr. Sykes was named as a defendant and served in the suit.  He failed to respond and was found in default.

[3] The other shareholders and directors of K3B were defendants Barry W. Comis, RKB Investments, Ltd., Falcon Creek Asset Management, Inc., Richard K. Brugger, and K. Todd Hicks.

[4] David Selleck organized SBG.  Fred Straub managed it.  UETRR never discovered their whereabouts.

wired $709,000 to SBG's bank account. And on June 7, Mr. Comis demanded that SBG transfer $362,000 to K3B.

When Viero Energy failed to deliver the railcars, UETRR terminated the leases and requested immediate return of the deposits. The parties entered into a repayment agreement, but when no payments were forthcoming, UETRR sued Viero Energy for breach of the lease agreements in Texas state court in September 2013.[5] Viero Energy failed to appear, and UETRR obtained a default judgment in December 2013 for $1,560,000. During post-judgment discovery, UETRR began to uncover the true facts about Viero Energy and the potential fraud, which in turn resulted in the filing of this suit in April 2014.

## B. *The Fraud*

After the bench trial, the district court found that "UETRR has proven by a preponderance of the evidence that it lost $1.56 million in the deposits by fraudulent inducements made by Ben Comis and it lost any means of recovery of that money by the repeated fraudulent representations made by Ben Comis and Talanda Sykes after failure of delivery." *Id*. at 756. In particular, the court found three categories of false representations.

The first two categories of false representations concerned the false information provided to UETRR to induce it to enter into the lease agreements and make the deposits. In this regard, the court found that Mr. Comis lied to UETRR

---

[5] UETRR sued Viero Energy in the Texas case but not in the instant federal case, in which it sued the Viero Group instead.

4

about the financial viability of Viero Energy. For example, Mr. Comis sent UETRR a "completely false and contrived Profit and Loss Statement . . . [in] July [] 2013, purporting to show total income of [more than $37 million] received in the first six months of 2013." *Id*. at 755. In truth, "Viero Energy was never a functioning business entity," *id*. at 749, and neither Viero Energy nor SBG "had financial resources available to obtain the railcars they contracted to provide," *id*. at 752. Further, Mr. Comis "blatantly lied . . . about Viero Energy and its possession of railcars leading to the signing of the lease agreements." *Id.* Here, the court noted a February 2013 email from Mr. Comis to UETRR in which he sent a photograph and set of specifications for an alleged Viero Energy railcar stating "ALL OUR [RAIL]CARS ARE FRA, AAR, & DOT APPROVED." *Id*. at 755. According to the court, "[a]ll of this was false." *Id*.

The third category concerned affirmative acts of concealment that "delay[ed] any recovery while there was some money still in [Viero Energy's] bank account." *Id*. In particular, the district court found that Mr. Comis "continued [the] deception by emailing assurances [to UETRR] through the Spring and Summer of 2013, explaining failure to deliver the cars. Sykes took over that role in his communications with [UETRR] also using false statements about obtaining financing to repay the deposits." *Id*. at 752.

The district court found that "[t]he lease agreements were not what UETRR assumed them to be when it sued Viero Energy in Texas." *Id*. at 750. Instead, the facts first uncovered after the Texas suit (because defendants concealed them)

5

established that "[t]he Texas judgment is now meaningless because it was based on the false assumption that Viero Energy was a functioning entity. In reality it was a chimera—a mythical creature." *Id*.

## II. **17-1200 – DEFENDANTS' APPEAL**

Defendants argue the Texas state court judgment precluded UETRR's fraud-based claims. The parties agree that Texas law determines the preclusive effect of the Texas state court judgment. *See* Aplt. Opening Br. at 12 & Aplee. Br. at 31. *See also Campbell v. City of Spencer*, 777 F.3d 1073, 1077-78 (10th Cir. 2014) ("Federal courts must give a state court judgment the same preclusive effect as would its originating state."). They further agree that Texas's claim-preclusion doctrine precludes relitigating claims that have been finally adjudicated, or that arise out of the same subject matter. Specifically, "res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

The first two elements are satisfied. The parties disagree about the third element—whether UETRR's fraud claims were raised or could have been raised in the Texas suit. According to defendants, this is a question of law that we review de novo. *See* Aplt. Br. at 11 ("The res judicata effect of a prior judgment is a question of law that we review de novo") (internal quotation marks omitted)). UETRR counters that de novo review applies only if it is undisputed what claims and facts

6

were alleged in the Texas state court suit. UETRR maintains we should review the district court's determination that it could not have discovered the potential fraud claims until after the Texas suit for clear error, because it "involve[s], primarily, a factual inquiry." Aplee. Br. at 28 (internal quotation marks omitted).

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Roberts v. Printup*, 595 F.3d 1181, 1186 (10th Cir. 2010) (internal quotation marks omitted). We review "mixed questions of law and fact . . . under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles." *Id.* (internal quotation marks omitted). Because the district court's determination that UETRR could not have discovered the potential fraud claims until after judgment entered in the Texas state court suit involves primarily a factual inquiry, our review is for clear error.

"A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1305 (10th Cir. 2015) (internal quotation marks omitted). "In conducting this review, we view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." *Id.* (internal quotation marks omitted).

Under this highly deferential clearly erroneous standard of review, we affirm the district court's findings of fact even if "the record supports a view of the evidence

7

that is permissible but contrary to the trial court's findings . . . [because] [w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*. at 1305-06 (internal quotation marks omitted). It is not enough that the evidence could support a different finding—we cannot reverse the district court's finding unless it finds no support in the evidence. Here, evidence supported the district court's finding that UETRR was prevented from discovering the potential fraud claims until after judgment entered in the Texas suit. Claim preclusion therefore does not apply.

### III. **17-1218 – UETRR'S CROSS APPEAL**

#### A. *Declaratory Judgment*

In its second amended complaint, UETRR asserted a claim for declaratory relief that defendants were liable for the judgment in the Texas suit as the privies or alter egos of Viero Energy. It argues here that the district court erred when it dismissed this claim.

UETRR is represented by counsel and therefore must file an appendix that serves as the record on appeal. *See* 10th Cir. R. 10.2(B), 30.1(B)(1). Its appendix contains the courtroom minutes from the hearing on the motion to dismiss, which state that UETRR's counsel "answer[ed] questions of the Court regarding the declaratory judgment claim," Aplt. App., Vol. 3 at 609, and that the court made its oral ruling. UETRR, however, has not included a transcript from the hearing or otherwise explained why one cannot be obtained.

8

Under 10th Cir. R. 10.1(A)(1), "[t]he appellant must provide all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal." *See also* 10th Cir. R. 10.3(C)(3) (requiring a record on appeal to contain transcripts of oral rulings). "[F]ailure to file the required transcript involves more than noncompliance with some useful but nonessential procedural admonition of primarily administrative focus. It raises an effective barrier to informed, substantive appellate review." *McGinnis v. Gustafson*, 978 F.2d 1199, 1201 (10th Cir. 1992). Without the transcript, we affirm the district court's order. *See id.*

## B. *Prejudgment Interest*

The district found that the Defendants—through Mr. Comis—fraudulently induced UETRR to sign the contracts and make the deposits. UETRR paid Viero Energy a $624,000 deposit on February 20, 2013, under the first railcar lease, and paid Viero a $936,000 deposit on March 21, 2013, on the second railcar lease. Nonetheless, the district court held that UETRR was entitled to prejudgment interest under Colo. Rev. Stat. § 5-12-102(1) from the date it first demanded return of the deposits—not when the deposits were made.

"A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest." *Loughridge v. Chiles Power Supply Co.,* 431 F.3d 1268, 1288 (10th Cir. 2005) (internal quotation marks omitted). Though we review the district court's award of prejudgment interest for abuse of discretion, we review "any statutory interpretation or legal analysis underlying such

9

an award de novo." *Id*. (internal quotation marks omitted). "Whether a particular factual circumstance falls within the terms of the prejudgment interest statue is a question of law reviewed de novo." *Id*.

Section 5-12-102(1)(a) provides that the prevailing party is entitled to prejudgment interest on money or property that is "wrongfully withheld." "Wrongfully withheld" means "when plaintiff's injury is measured because the damages, if then paid, would make the plaintiff whole." *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 827 (Colo. 2008). Therefore, the Colorado courts have held that injury from fraudulent or tortious conduct is typically measured from the date of the defendant's wrongful conduct. *E.g.*, *Frontier Exploration, Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 893-94 (Colo. App. 1992) (holding prejudgment interest began to accrue on date insured's fraudulent estimates caused insurance company to pay benefits); *Arguelles v. Ridgeway*, 827 P.2d 553, 558 (Colo. App. 1991) (holding prejudgment interest accrued from date defendant fraudulently induced plaintiff to sign a real estate contract). Defendants wrongful conduct occurred when they fraudulently induced UETRR to enter into the agreements and make the deposits. UETRR is therefore entitled to prejudgment interest from the date of the deposits.

## IV. CONCLUSION

In No. 17-1200, we affirm the district court's judgment in favor of UETRR and against defendants on its fraud claims.

In No. 17-1218, we affirm the court's order that dismissed UETRR's

10

declaratory judgment claim.  We reverse the court's order that denied UETRR

prejudgment interest from the date of the deposits, and remand with instructions to

enter an award of prejudgment interest consistent with this order and judgment.[6]

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[6] We deny UETRR's motion to dismiss and further deny its motion for attorney fees incurred in preparing the motion.